IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 07-cv-02503-REB-MJW

STEVEN A. STENDER and
INFINITY STREET OPERATING,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

JAMES A. CARDWELL,
ERNEST A. GERARDI, JR.,
RUTH ANN M. GILLIS,
NED S. HOLMES,
ROBERT P. KOGOD,
JAMES H. POLK, III,
JOHN M. RICHMAN,
JOHN C. SCHWEITZER,
R. SCOT SELLERS,
ROBERT H. SMITH
STEPHEN R. DEMERITT,
CHARLES MUELLER, JR.,
CAROLINE BROWNER,
MARK SCHUMACHER,
ALFRED G. NEELY,
ARCHSTONE-SMITH OPERATING TRUST,
ARCHSTONE-SMITH TRUST,
LEHMAN BOTHERS HOLDINGS INC, and
TISHMAN SPEYER DEVELOPMENT CORPORATION

    Defendants.

---

**ORDER**

---

**Blackburn, J.**

    The matters before me are (1) **Plaintiffs' Motion To Reopen Case for Good**

**Cause** [#104],[1] filed December 29, 2009; (2) **Plaintiffs' Motion for Relief from a Judgment or Order Pursuant to Fed.R.Civ.P. 60(b)** [#105], filed December 29, 2009; (3) **Plaintiffs' Motion to Compel Defendants To Proceed with Arbitration or, in the Alternative, for the Court To Declare the Arbitration Clause Unenforceable** [#109], filed March 19, 2010; and (4) **Plaintiffs' Motion for Partial Withdrawal of Their March 19, 2010 Motion To Compel Defendants To Proceed with Arbitration or, in the Alternative, for the Court To Declare the Arbitration Clause Unenforceable** [#113], filed May 7, 2010. The motions are ripe for review.[2] I grant the motions to reopen, to withdraw, and to compel arbitration. I deny the motion for relief from judgment, which I construe as a motion for reconsideration.

## I. JURISDICTION

I have subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act).

## II. BACKGROUND[3]

This case arises out of a May, 2007, merger between Archstone Smith Trust (the "Archstone REIT") and the Archstone Operating Trust (the "Archstone UPREIT"), on the

---

[1] "[#104]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Defendants did not respond to the plaintiffs' motion to reopen the case or to withdraw part of their motion to compel. Plaintiffs have not filed a reply in support of their motion to compel. Despite the lack of complete briefing, I exercise my prerogative pursuant to the Local Rules of this Court and determine the motions at this juncture. *See* **D.C.COLO.LCivR** 7.1C ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

[3] The facts of this case have been set forth in detail repeatedly in other orders in this case, and the parties ought be quite familiar with them. Accordingly, I present but a brief aperçu.

one hand, and Lehman Brothers Holding, Inc. ("Lehman") and Tishman Speyer Development Corporation ("Tishman"), on the other, in which Lehman and Tishman would acquire the Archstone REIT and UPREIT. The Archstone REIT held a majority interest in the Archstone UPREIT, in limited partnership interest shares known as "A-1 units." Plaintiffs in this case were also A-1 unit holders.

Per the terms of the merger agreement, all A-1 unit holders could exchange their units for either cash, partnership interests in the post-merger entity (called "series O" units), or a combination of the two. Plaintiffs assert that A-1 unit holders who took the cash option were forced to realize capital gains and pay taxes on the buyout, and, therefore, were denied the tax advantages of the A-1 units. A-1 unit holders who converted their units into series O units allegedly lost the liquidity of the original units because they may redeem the series O units only for a fixed amount of cash. Additionally, plaintiffs claim that series O unit holders have fewer rights and protections than A-1 unit holders enjoyed previously.

Plaintiffs filed a complaint on November 30, 2007, alleging claims for breach of contract against the Archstone REIT and the Archstone UPREIT, and for breach of fiduciary duties by majority shareholder oppression against the Archstone REIT, Tishman, Lehman, and the individual defendants. Former Chief Judge Nottingham found that an arbitration clause in the Archstone UPREIT declaration of trust bound the parties to arbitrate the claim for breach of contract to the extent it involved tax-deferral provisions in the declaration of trust. He stayed and administratively closed the case pending arbitration and ordered that any final judgment in this case would dismiss with

3

prejudice plaintiffs' claims for breach of fiduciary duty and breach of contract, to the extent the contractual claims involved "breach of any alleged dividend or liquidity provisions" of the Archstone UPREIT declaration of trust or breach of any rights derived from any source other than the declaration of trust. Following Judge Nottingham's resignation, the case was reassigned to me.

My first substantive order in this case was to grant in part and deny in part plaintiffs' motion to reconsider Judge Nottingham's order. I reopened the case, found that a final judgment would dismiss without prejudice (1) plaintiffs' breach of contract claim, to the extent the claim did not refer to tax-deferral provisions in the Archstone UPREIT declaration of trust; and (2) plaintiffs' breach of fiduciary duty claims, to the extent the claims pertained to oppression of minority shareholders by majority shareholders. I denied the motion in all other respects and left intact Judge Nottingham's order dismissing all other aspects of plaintiffs' claims with prejudice. Additionally I stayed and administratively closed the case pending arbitration of the arbitrable aspects of the breach of contract claim, and provided that plaintiffs could file an amended complaint once arbitration was completed. (***See* Order re: Motions To Reopen and To Amend Complaint** [#101], filed September 29, 2009.) I denied plaintiffs' motion to reconsider that order. (***See* Order Denying Plaintiffs' Motion To Reconsider Pursuant to Fed.R.Civ.P. 59(e)** [#103], filed October 20, 2009.) Plaintiffs now have filed yet another round of motions to reopen and reconsider, as well as a motion to compel arbitration or declare the arbitration clause unenforceable. I address each in turn.

## III. ANALYSIS

### A. Motion To Reopen

This case is currently administratively closed to allow for arbitration of plaintiffs' breach of contract claim. Pursuant to D.C.COLO.LCivR 41.2, a case that has been administratively closed may be reopened for good cause shown. Good cause may consist of grounds showing that reconsideration or other relief from judgment is warranted. **See Peralta v. American Home Assurance Co.**, 2008 WL 4183494 at *1 (D. Colo. Sept. 8, 2008). Accordingly, the motion to reopen is granted for the limited purpose of analyzing the outstanding motions.

### B. Motion for Relief from a Judgment or Order

As noted, plaintiffs' pending motion for relief from a judgment or order is the second motion of its kind that plaintiffs have filed in this case concerning their claims. Plaintiffs are consistent, if not particularly perspicacious. As they did previously, plaintiffs have styled the motion now pending before me as a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(6). As I noted in my order addressing plaintiffs' earlier motion, Rule 60(b) cannot be applied to orders staying and closing a case administratively, such as the order in this case. **See id**. Accordingly, I construe plaintiffs' motion as a motion to reconsider under Fed.R.Civ.P. 59(e). **See id.**

The bases warranting reconsideration under Rule 59(e) are limited to (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. **Servants of the Paraclete v. Does**, 204 F.3d 1005, 1012 (10th Cir. 2000). Plaintiffs maintain that there has been a

5

change in the controlling law that revives some of their claims that were dismissed with prejudice. More precisely, Maryland law, which undisputedly applies in this case, requires the following standard of care for members of boards of directors:

> (a) A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves
>
> (1) In good faith;
> (2) In a manner he reasonably believes to be in the best interests of the corporation; and
> (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.

**Md. Code Ann., Corps. & Ass'ns** § 2-405.1(a). However, Maryland law restricts the audience to whom directors owe these duties: "Nothing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation." *Id.* § 2-405.1(g). As is relevant to this case, the practical result of the statutory language is that lawsuits for breach of the aforementioned fiduciary duties may be brought only derivatively on behalf of the business organization owed the duties, and not directly on behalf of the organization's shareholders. ***Mona v. Mona Electric Group, Inc.***, 934 A.2d 450, 465 (Md. App. 2007).[4]

Plaintiffs' complaint contains the following allegations and accusations under the heading "Breach of Fiduciary Duties – Self Dealing [sic]":

---

[4] There is one exception to this general rule: individual shareholder plaintiffs may bring direct suits for breach of fiduciary duties if they can establish that they suffered "an injury that is separate and distinct from any injury suffered either directly by the corporation or derivatively by the stockholder because of the injury to the corporation." *Mona*, 934 A.2d at 465. As described more fully herein, and in prior orders, the allegations of plaintiffs' complaint and attempted amendment thereto are insufficient to make out such a claim.

> At all relevant times, the Individual Defendants and the Archstone REIT, as the sole trustee and majority owner of Archstone UPREIT, had: (1) a fiduciary duty to the minority A-1 Unit holders to, in good faith, act in the best interests of all A-1 Unit holders; (2) a fiduciary duty not to act in reckless disregard of its [sic] duties as trustee; (3) a duty not to self-deal with the Archstone UPREIT on terms that were more beneficial to the Archstone REIT, its directors and officers, or any of its affiliates than to the minority holders; (4) a fiduciary duty to deal at arms [sic] length with the Archstone UPREIT and in such dealings to eliminate all conflicts of interests [sic]; and (5) a fiduciary duty to ensure that in [sic] all dealings with the Archstone UPREIT were maintained [sic] an "entire fairness" standard, meaning that any transactions between the Archstone REIT and Archstone UPREIT must be [sic] achieved, if at all, through a fair process at a fair price.
>
> The Archstone REIT breached its fiduciary duties by, *inter alia*: (1) refusing to allow A-1 Unit holders to vote on the Merger; (2) refusing to appoint an independent committee to act on behalf of the Archstone UPREIT; (3) refusing to require that any transaction between [sic] Archstone REIT (and any affiliates thereof) and [sic] Archstone UPREIT be approved by a majority vote of the A-1 and A-2 Unit holders voting separately as a class; and (4) refusing to allow the Archstone UPREIT to engage investment and legal advisers to advise on the fairness of any transactions, from a procedural and financial view to the minority holders.

Judge Nottingham ordered that this claim would be dismissed with prejudice to the extent it pertained to a breach of shareholder rights – such as the right to vote for or against the merger, to vote as a class, or to demand legal advice – because any such claim would sound in contract and, therefore, could not be brought styled as or simultaneously with a tort claim for breach of fiduciary duty.[5]  Judge Nottingham ordered

---

[5] *See, e.g., Foodbrands Supply Chain Services v. Terracon, Inc.*, 2003 WL 23484633 at *6 (D. Kan. Dec. 8, 2003) ("[T]he Tenth Circuit [has] consistently refused to allow tort claims to co-exist with breach of contract claims when the two are grounded in the same facts.") (citations omitted).

7

also that the claim would be dismissed with prejudice to the extent it was brought directly as a breach of fiduciary duty claim, because pursuant to Maryland law, directors owe fiduciary duties to the business organization, not to individual shareholders. I agreed with Judge Nottingham – twice – in my orders addressing these issues.

Undeterred, plaintiffs point to a recent opinion of the Court of Appeals of Maryland, that state's highest court, holding, in the context of a cash-out merger, that when a decision has been made to sell the corporation, directors owe common law fiduciary duties of candor and maximization of shareholder value directly to shareholders, and shareholders, thus, may bring direct suit for any breach of those duties. **See Shenker v. Laureate Education, Inc.**, 983 A.2d 408 (Md. 2009). Plaintiffs argue that the holding in **Shenker** resurrects their direct claims for breach of fiduciary duty. I disagree.

I have reservations as to the applicability of **Shenker** in the first instance. The duties of candor and maximization of value that directors directly owe to shareholders recognized in **Shenker** arise in a very narrow context – specifically, that of a cash-out merger when the decision to sell the corporation already has been made:

> Generally, in a cash-out (or freeze-out) merger transaction, the majority shareholder (or shareholders) of the target company seeks to gain ownership of the remaining shares in the target company. This is accomplished by incorporating an acquiring company to purchase for cash the shares of the target company. Due to the majority's controlling position in the target company, it may force any minority shareholders to surrender their shares and accept the cash payment, effectively eliminating their interest in the target company (and leaving them with no subsequent interest in the acquiring company). Such a cash-out merger stands in

8

>contrast to a traditional merger, in which shareholders of the
>target company trade in their shares in exchange for shares
>in the acquiring company.

*Id.* at 413 (citation omitted). By contrast, the instant case does not involve a pure cash-out merger, since A-1 unit holders had the option either to cash out their shares, trade them in for series O units (*i.e.*, shares in the post-merger organization), or some combination of the two. Because the transaction and attendant concerns in this case are substantively different than those in **Shenker**, I have some question whether the logic of the decision applies here.

Nonetheless, even if **Shenker** does apply such that defendants did directly owe plaintiffs duties of candor and maximization, I find no allegations in plaintiffs' complaint that such duties either were owed or breached. As set forth above, by plaintiffs' own estimation, defendants purportedly owed fiduciary duties to act in good faith and in the best interests of shareholders, to engage in arm's length transactions, and to conduct business pursuant to an "entire fairness" standard.[6] Plaintiffs assert also that defendants owed fiduciary duties not to disregard their duties and not to self-deal. Plaintiffs then allege that defendants breached these duties by refusing to (1) allow a shareholder vote on the merger; (2) appoint an independent representative committee; (3) require a shareholder majority vote; and (4) obtain investment and legal advisors. Thus, to the extent **Shenker** represents a change in the law, it is irrelevant, for I cannot

---

[6] As a general matter, the business judgment rule provides a presumption that directors have acted in good faith and with due care and loyalty. When this presumption is rebutted with evidence of contrary behavior, the accused directors bear the burden to establish that the transaction underlying the controversy meets an entire fairness standard – that is, the transaction was conducted with fair dealing at a fair price. ***See In re Hechinger Investment Co. of Delaware***, 327 B.R. 537, 549 (D. Del. 2005), ***aff'd***, 278 Fed. Appx. 125 (2008).

find that any such change could affect the claims contained in plaintiffs' complaint.[7] Accordingly, plaintiffs' motion for reconsideration must be denied.

### C. Motions To Compel Arbitration and To Withdraw

Plaintiffs have filed also a motion to compel arbitration or to declare the arbitration clause unenforceable. Therein, they admonish defendants for failing to accede to plaintiffs' demands to submit to class-wide arbitration, failing to move the court to compel arbitration, and for generally hindering arbitration. Although plaintiffs purport to seek to compel arbitration, they simultaneously argue that, because the parties' arbitration clause requires that the arbitrator must be a "nationally recognized public accounting firm," and because no nationally recognized public accounting firm can arbitrate their case due to conflicts with the class and/or lack of expertise, the arbitration clause ultimately is unenforceable.

Subsequently, plaintiffs have been forced to acknowledge that the Supreme Court's recent decision in ***Stolt-Nielsen S.A. v. Animal Feeds International Corp***, 2010 WL 1655826 (April 27, 2010) (No. 08-1198), knocks out the underpinnings of their just-so argument insofar as it seeks class-wide arbitration and posits barriers to arbitration on that basis. The Supreme Court there held that a party "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." ***Id.*** at *13 (emphasis in original). Acceding to the clear import of ***Stolt-Nielsen***, plaintiffs filed a motion to withdraw their

---

[7] Plaintiffs have been told repeatedly and in no uncertain terms that any amendment to the complaint to plead such claims, if they can be pleaded, must await the outcome of arbitration.

motion insofar as it seeks to compel class-wide arbitration and, on the basis thereof, to have the arbitration clause declared unenforceable. Plaintiffs clarify that they continue to seek to compel arbitration of the individual shareholders' claims.

It should be noted again that there is a strong federal policy favoring arbitration of disputes. ***Cone Memorial Hospital v. Mercury Construction Corp.***, 460 U.S. 1, 23 n.27, 103 S.Ct. 927, 940 n.27, 74 L.Ed.2d 765 (1983). The decision whether to enforce an arbitration agreement requires a two-step inquiry. First, I must determine whether the parties agreed to arbitrate the dispute. ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir. 2000). I then must consider whether any statute or policy renders the claims non-arbitrable. ***Mitsubishi Motors Corp.***, 105 S.Ct. at 3355; ***Williams***, 203 F.3d at 764. My analysis in this case is greatly simplified given the procedural and factual histories of this case.

There is no dispute that an arbitration agreement exists in this case. As has been set forth in prior orders in this case, the agreement reads, in relevant part:

> If the Trust has breached or violated any of the covenants set forth in [certain sections of the Archstone UPREIT declaration of trust] the Trust and the [A-1 unit holder] agree to negotiate in good faith to resolve any disagreements regarding any such breach or violation and the amount of damages, if any, payable to such [A-1 unit holder] . . . If any such disagreement cannot be resolved by the Trust and such [A-1 unit holder] within sixty (60) days after the receipt of notice from the Trust of such breach and the amount of income to be recognized by reason thereof, the Trust and the [A-1 unit holder] shall jointly retain a nationally

> recognized independent public accounting firm . . . to act as
> an arbitrator to resolve as expeditiously as possible all points
> of any such disagreement.

(*See* **Defendants' Response App.**, Exh. A [#112], filed May 28, 2010.) It has been determined consistently that the tax-deferral aspect of plaintiffs' breach of contract claim falls within the ambit of the agreement and that no statute or policy renders such claims non-arbitrable. Those are the only questions properly before me.[8]

Regardless which party is responsible for the delay in initiating arbitration, there can be no question that the parties are not in compliance with the arbitration agreement as both Judge Nottingham and I have repeatedly and consistently interpreted it in this case. So that it is absolutely clear, I asseverate, yet again, that enforcement of the arbitration clause is required in this case. It is my expectation that the parties will proceed apace to fulfill their contractual obligations in that regard without further ill-advised attempts to involve the federal courts in disputes that are not ripe for judicial determination.

Therefore, plaintiffs' motion to compel arbitration, as modified by their motion to withdraw, must be granted.

---

[8] For this reason, defendants' argument that plaintiffs may not seek to compel arbitration because they have not notified defendants of the alleged breach and the amount of damages attendant thereon does not obtain. Assuming *arguendo* that it is plaintiffs' responsibility to provide such information (a somewhat dubious proposition, given that the language of the arbitration clause specifically contemplates "notice *from the Trust*," not the A-1 unit holders), whether they have complied *vel non* is an issue to be determined in arbitration itself. ***See Howsam v. Dean Witter Reynolds, Inc.***, 537 U.S. 79, 84, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002) (noting that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" and noting that such questions include "prerequisites such as . . . notice, . . . and other conditions precedent to an obligation to arbitrate") (citations and internal quotation marks omitted).

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiffs' Motion To Reopen Case for Good Cause** [#104], filed December 29, 2009, is **GRANTED**;

2. That this case is **REOPENED** pursuant to D.C.COLO.LCivR 41.2, solely for the purpose of resolving the motions addressed in this order;

3. That **Plaintiffs' Motion for Relief from a Judgment or Order Pursuant to Fed.R.Civ.P. 60(b)(6)** [#105], filed December 29, 2009, is **DENIED**;

4. That **Plaintiffs' Motion for Partial Withdrawal of Their March 19, 2010 Motion to Compel Defendants To Proceed with Arbitration or, in the Alternative, for the Court To Declare the Arbitration Clause Unenforceable** [#113], filed May 7, 2010, is **GRANTED**;

5. That **Plaintiffs' Motion To Compel Defendants To Proceed with Arbitration or, in the Alternative, for the Court To Declare the Arbitration Clause Unenforceable** [#109], filed March 19, 2010, is **GRANTED IN PART** to the extent it seeks to compel arbitration of the individual shareholders' claims;

6. That the terms of my **Order Re: Motions To Reopen and To Amend Complaint** [#101], filed September 28, 2009, **SHALL REMAIN** in full force and effect; and

7. That pursuant to D.C.COLO.LCivR 41.2, this case is again

**ADMINISTRATIVELY CLOSED.**

Dated May 12, 2010, at Denver, Colorado.

**BY THE COURT:**

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge