**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 07-cv-02503-WJM-MJW

STEVEN A. STENDER, and
INFINITY CLARK STREET OPERATING, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

JAMES A. CARDWELL, et al.,

    Defendants.

**ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

This matter is before the Court on "Plaintiffs' Motion for Leave to File an Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 15(A) and Supporting Memorandum of Law."[1] The Court has jurisdiction under 28 U.S.C. § 1332(d)(2). For the following reasons, the Court grants the motion.

**I. BACKGROUND**

This is a putative class action. The case arises out of a May 2007 merger between the Archstone Smith Trust (the "Archstone REIT")[2] and the Archstone Operating Trust (the "Archstone UPREIT"), on the one hand, and Lehman Brothers Holding, Inc. ("Lehman") and Tishman Speyer Development Corporation ("Tishman"),

---

[1] (ECF No. 120.)

[2] A REIT is an entity that owns and manages income-producing real estate such as apartments, offices, and industrial space. (ECF No. 1 ¶ 44 .)

1

on the other.[3]  The Archstone REIT held a majority interest in the Archstone UPREIT, in limited partnership interest shares known as "A-1 units."  Per the terms of the merger agreement, all A-1 unit holders could exchange their units for either cash, partnership interests in the post-merger entity (called "series O" units), or a combination of the two.[4]

Plaintiffs are former A-1 unit holders.[5]  On November 30, 2007, Plaintiffs filed a Class Action Complaint on their own behalf and on behalf of all A-1 Unit holders of the Archstone UPREIT at the time of the merger.[6]  In it they assert that A-1 unit holders who took the cash option were forced to realize capital gains and pay taxes on the buyout, and, therefore, were denied the tax advantages of the A-1 units.[7]  Further, A-1 unit holders who converted their units into series O units allegedly lost the liquidity of the original units because they may redeem the series O units only for a fixed amount of cash.[8]  Finally, Plaintiffs claim that series O unit holders have fewer rights and protections than A-1 unit holders enjoyed previously.  Plaintiffs alleged three causes of action in their Complaint.  Count I alleged breach of contract against Archstone UPREIT and Archstone REIT.  Counts II and III alleged breach of fiduciary duties against the

---

[3](*See* ECF No. 1 ¶¶ 67-73.)

[4](ECF No. 1 ¶ 74.)

[5](ECF No. 1 ¶¶ 10, 11).

[6](ECF No. 1 ¶ 95).

[7](ECF No. 1 ¶¶ 10, 82.)

[8](ECF No. 1 ¶ 83-85.)

2

Archstone REIT, Tishman, Lehman, and the individual defendants.[9]

On September 30, 2008, then-Chief District Judge Edward Nottingham issued an order deciding, among other things, a motion to dismiss filed by Defendants.[10] Judge Nottingham found that an arbitration clause in the Archstone UPREIT Declaration of Trust[11] bound the parties to arbitrate the claim for breach of contract (Claim I) to the extent the claim involved tax-deferral provisions in the declaration of trust.[12] He also ordered that any final judgment in the case would include a dismissal with prejudice of Plaintiffs' claims for breach of fiduciary duty (Counts II and III) and Plaintiffs' breach of contract claim (Count I), to the extent that claim alleged "breach of any alleged dividend or liquidity provisions" of the Archstone UPREIT declaration of trust or breach of any rights derived from any source other than the declaration of trust.[13] He stayed and administratively closed the case pending the outcome of arbitration.

A year later, on September 28, 2009, District Judge Robert Blackburn reopened the case and issued an order on, among other things, Plaintiffs' motion to reconsider Judge Nottingham's September 30, 2008 order.[14] Judge Blackburn granted Plaintiffs'

---

[9]The "individual defendants" were individual directors and officers of Archstone REIT and the Archstone UPREIT.

[10](ECF No. 29.)

[11]According to the Complaint, Archstone UPREIT's Declaration of Trust is what governed relations between the Archstone REIT and the Archstone UPREIT. (ECF No. 76 at 6, citing ECF No. 1, ¶ 31.)

[12](ECF No. 76 at 22, 25, 43.)

[13](ECF No. 76 at 43-44.)

[14](ECF No. 78.)

motion in part and amended Judge Nottingham's order to reflect that the following claims would be dismissed *without* prejudice: (1) plaintiffs' breach of contract claim, to the extent the claim did not refer to tax-deferral provisions in the Archstone UPREIT declaration of trust; and (2) plaintiffs' breach of fiduciary duty claims, to the extent the claims pertained to oppression of minority shareholders by majority shareholders.[15] Judge Blackburn denied the motion in all other respects and left intact Judge Nottingham's order dismissing all other aspects of Plaintiffs' claims with prejudice. He stayed and administratively closed the case pending arbitration of the arbitrable aspects of the breach of contract claim (Claim I), and provided that Plaintiffs could file an amended complaint once arbitration was completed.[16]

On May 12, 2010, Judge Blackburn faced another round of motions to reopen and reconsider, as well as a motion to compel arbitration or declare the arbitration clause unenforceable. He reopened the case solely for the purpose of addressing the pending motions. He ordered the arbitrable portion of Count I to arbitration and once again administratively closed the case.[17]

On September 15, 2010, Plaintiffs filed the at-issue "Motion for Leave to File an Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 15(A) and Supporting Memorandum of Law."

---

[15](ECF No. 101 at 11-12.)

[16](*Id.*)

[17](ECF No. 114 at 12-13.)

## II.  DISCUSSION

### A.      Standard of Review

"'Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *United States v. Hougham*, 364 U.S. 310, 316 (1960)). The rule prescribes a liberal policy of amendment. *See generally* 6 Wright, Miller, & Kane, *Federal Practice and Procedure* §§ 1473, 1487 (3d ed. 2010).  It directs that "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U .S. 178, 182 (1962).  "'Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'"  *Bylin*, 568 F.3d at 1229 (citation omitted).

### B.      Analysis

Plaintiffs seek to amend their complaint: (1) to reassert claims the Court previously dismissed with leave to amend, *i.e.*, the non-arbitrable aspects of the breach of contract claim and the breach of fiduciary duty claim relating to minority oppression; (2) to add new parties; and (3) to add counts for tortious interference with contract, civil conspiracy, and violations of the federal securities law.[18]  In support of their motion, Plaintiffs argue they have exhibited no undue delay, bad faith or dilatory motive and the

---

[18](*See* ECF No. 120 at 3.)

Defendants, existing and proposed by amendment, will not be prejudiced.[19]

Defendants oppose the amendment. They argue Plaintiffs' motion should be denied because of Plaintiffs' "lengthy history of serial vexatious litigation and delay" and because the proposed amendment would be futile.[20]

### 1)     *Vexatious History and Delay*

Defendants first argue Plaintiffs' motion should be denied because Plaintiffs have, essentially, irritated Defendants by, among other things, their delay in bringing these proposed amendments. The Court rejects this argument.

The Court "focuses primarily on the reasons for the delay." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006). This case has been administratively closed for large portions of its existence.[21] That fact explains, in large part, the perceived delays in bringing this proposed amended complaint. In addition, Plaintiffs were effectively forced to delay bringing this proposed amendment due to a Court order which allowed them leave to amend their complaint following arbitration of the one arbitrable claim, *i.e.*, the portion of their breach of contract claim that relates to the tax-deferral provisions in the Archstone UPREIT Declaration of Trust.[22] Given the lack of progress on arbitration, Plaintiffs now move to amend their complaint to preserve their new claims, *i.e.*, to avoid running afoul of any statute of limitations.[23]

---

[19](ECF No. 120 at 8-13.)

[20](ECF No. 127 at 8-25.)

[21](*See* ECF No. 76 at 43-44; ECF No. 101 at 12; ECF No. 114 at 12-13.)

[22](ECF No. 101 at 11.)

[23](ECF No. 120 at 3;ECF No. 147 at 8-9. )

The Court finds that the prior administrative closures in this case, as well as the Court's order granting Plaintiffs leave to amend after the conclusion of arbitration are legitimate grounds for delay. Accordingly, the Court finds and concludes that Plaintiffs have not engaged in the "undue delay" of this litigation.

### 2) *Futility*

Defendants also argue the proposed amendments should be denied as futile because they fail to state claims that would pass muster under FED. R. CIV. P. 12(b)(6).

It is true, as Defendants assert, that the Court may deny leave to amend if the proposed amendments fail to state plausible claims under Rule 12(b)(6). *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim, . . . "). The Court, however, will not undertake that analysis at this time because of a glaring omission in Defendants' opposition to the proposed amendments. Defendants do not argue they would be prejudiced by Plaintiffs' proposed amendments.[24] Prejudice to the opposing party is the single most important factor in deciding whether to allow leave to amend. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006); *See also* 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1487 (3d ed. 2010) ("Perhaps the most important factor . . . for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading.")

Because Defendants do not argue they face any – let alone undue – prejudice if

---

[24](*See* ECF No. 127.)

the Court grants Plaintiffs leave to file their Amended Class Action Complaint, their opposition to the instant motion is grievously weakened. Accordingly, the Court–preserving its scarce resources–will not at this time consider the question whether the amendments should be denied on grounds of futility because they fail to state plausible claims for relief. The Court will consider that question if and when Defendants file a motion to dismiss on those grounds.

### III.  CONCLUSION

Given the reasons discussed above, and because Defendants will not be unduly prejudiced by the Plaintiffs' proposed amendments, the Court will permit Plaintiffs leave to file their proposed Amended Class Action Complaint.

- IT IS THEREFORE ORDERED that Plaintiffs' "Motion for Leave to File an Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 15(A) and Supporting Memorandum of Law" (ECF No. 120) is GRANTED.
- Plaintiffs are granted leave to file and serve the proposed Amended Class Action Complaint.

Dated this 1st day of April, 2011

BY THE COURT:

s/ *William J. Martínez*
United States District Judge