**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 07-cv-02503-WJM-MJW

STEVEN A. STENDER,
HAROLD SILVER, and
INFINITY CLARK STREET OPERATING, L.L.C., on behalf of themselves and all others
similarly situated,

      Plaintiffs,

v.

ARCHSTONE-SMITH OPERATING TRUST, et al.,

      Defendants.

---

**ORDER GRANTING DEFENDANT ARCHSTONE'S MOTION
TO CONFIRM ARBITRATION AWARD**

---

Plaintiffs Steven A. Stender, Harold Silver, and Infinity Clark Street Operating

(collectively "Plaintiffs") bring this putative class action against Defendants Archstone-

Smith Operating Trust ("Archstone") and others (collectively "Defendants") arising out of

a 2007 transaction in which the publicly held Archstone-Smith Real Estate Investment

Trust ("REIT") was taken private.  (Am. Compl. (ECF No. 151) pp. 2-3.)

On May 12, 2010, the Court ordered the parties to arbitrate the tax-deferral

aspects of Plaintiffs' breach of contract claim.  (ECF No. 114.)  Such arbitration

occurred and a decision in favor of Archstone was issued on March 8, 2013.  (ECF No.

184-1.)  Before the Court is Archstone's Motion to Confirm Arbitration Final Award in

Archstone's Favor ("Motion").  (ECF No. 184.)  Plaintiffs oppose confirmation of the

award and instead ask the Court to vacate it.  (ECF No. 226.)

For the reasons set forth below, the Motion is granted and the Arbitration Award is confirmed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court will not discuss the extraordinarily long and tortured history of this case, but will focus only on the aspects of the case that are relevant to the instant Motion.  Plaintiffs owned Class A-1 Common Units of the Archstone-Smith Operating Trust ("A-1 Units").  (Am. Compl. ¶ 1.)  A-1 Units have the benefit of deferred taxation, and such benefit is a primary reason why investment in an REIT, such as Archstone, is beneficial.  (*Id.* ¶ 55.)  The obligations of the REIT to the holders of the A-1 Units are set forth in a Declaration of Trust ("DOT"), which was executed in 2001.  (*Id.* ¶ 59.)  The DOT provides that Archstone will reimburse A-1 Unit holders if any merger results in the holder losing their tax-deferral benefits.  (*Id.* ¶¶ 59-61.)

In 2007, Archstone announced that it had signed a merger agreement, which eliminated the A-1 Units.  (*Id.* ¶ 90.)  A-1 Unit holders were required to elect either to have their A-1 shares converted to Series O units, or to take a cash buyout.  (*Id.* ¶¶ 96-99.)  Plaintiffs' belief that the Series O units did not offer the same benefits as the A-1 Units, amongst other issues, led to the filing of this action.  (*Id.*)

In their Amended Complaint, Plaintiffs bring causes of action for breach of contract, breach of fiduciary duty, tortious interference with contract, civil conspiracy, and violations of the Securities Act.  (ECF No. 151.)  On September 30, 2008, the Court ordered that Plaintiffs' breach of contract claim relating to the tax deferral provisions of the Declaration of Trust was subject to an arbitration clause.  (ECF No. 76.)  After years

of wrangling, the parties agreed to retain retired United States District Court Judge

Bruce Kaufman as their arbitrator (the "Arbitrator").  (ECF No. 158.)

The Arbitrator presided over a nine-day evidentiary hearing in October 2012.

(ECF No. 184-1 at 2.)  The parties submitted post-hearing briefs, and the Arbitrator held

oral argument in January 2013.  His final decision in favor of Archstone was issued on

March 8, 2013 (the "Award").  (*Id*.)  After a thorough analysis of the arguments raised by

the parties, the Arbitrator concluded as follows:

> This arbitration boils down to one inquiry—did the merger
> result in A-1 Unit Holders being required to recognize federal
> income taxable gain.  For some A-1 Unit Holders, like
> Claimants, the merger did in fact result in the recognition of
> taxable gain but only because they chose the cash option.
> However, for the reasons stated herein, they could have
> chosen Series O Units and the record is devoid of evidence
> that this choice would have resulted in the recognition of
> taxable gain. . . . Claimants were not required to recognize
> taxable gain as a result of the merger and therefore
> Respondent did not breach Section 2 of the TPA.

(*Id*. at 11.)  Archstone now moves to confirm this Award.  (ECF No. 184.)

## II.  LEGAL STANDARD

Confirmation of an arbitration award under § 9 of the FAA is intended to be

summary; the Court "must grant . . . an order [confirming the award] unless the award is

vacated, modified, or corrected."  9 U.S.C. § 9.  A district court "does not sit to hear

claims of factual or legal error by an arbitrator as if it were an appellate court reviewing

a lower court's decision."  *Morrill v. G.A. Mktg., Inc.*, 2006 WL 2038419, at *1 (D. Colo.

July 18, 2006) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38

(1987)).  Thus, arbitral awards must be confirmed even in the face of errors in factual

findings, or interpretation and application of the law.  *See Denver & Rio Grande W. R.R. v. Union Pac. R.R.*, 119 F.3d 847, 849 (10th Cir. 1997).

Maximum deference is owed to the arbitrators because the parties have contracted to use binding arbitration rather than litigation as a means to resolve their disputes.  *See Commercial Refrigeration, Inc. v. Layton Constr. Co., Inc.*, 319 F. Supp. 2d 1267 (D. Utah 2004); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.").

To give full effect to the parties' contractual agreement, arbitration awards may be vacated by a court only on extremely limited grounds.  Indeed, the Tenth Circuit has characterized the standard of review as "among the narrowest known to the law."  *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005); *see also Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1172 (10th Cir. 2006) ("Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances.").

Section 10 of the FAA permits a district court to vacate an arbitration award under only four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; [and] (4) where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made.

9 U.S.C. § 10.  Section 11 of the FAA allows a court to modify an award "[w]here the

arbitrators have awarded upon a matter not submitted to them . . . ."  9 U.S.C. § 11.

In addition to these statutory reasons, the Tenth Circuit has also recognized "a handful

of judicially created reasons" for vacating or modifying an award, including that the

arbitrators acted in "manifest disregard of the law."[1]  *See Sheldon v. Vermonty*, 269

F.3d 1202, 1206 (10th Cir. 2001).  "Manifest disregard of the law clearly means more

than error or misunderstanding with respect to the law."  *ARW Exploration Corp. v.

Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995); *see also Stolt–Nielsen S.A. v.

AnimalFeeds Int'l*, 559 U.S. 662, 671 (2010) ("It is not enough . . . to show that the

panel committed an error—or even a serious error.").  Instead, manifest disregard

requires a party to establish that the arbitrator acted with "willful inattentiveness to the

governing law"; that is, "the record must show the arbitrator knew the law and explicitly

disregarded it."  *Hollern*, 458 F.3d at 1176. Notably, the manifest disregard standard

applies only to conclusions of law, not to the arbitrators' factual findings, which are

beyond review.  *See Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1204

(10th Cir. 1999).

---

[1] There is some question as to whether the manifest disregard standard survived the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). However, despite the opportunity to do so, the Tenth Circuit has not abandoned the manifest disregard standard.  *See Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612 (10th Cir. 2011) (noting a circuit split regarding whether the manifest disregard standard survives post-*Hall Street*, but declining to make a determination as it was not necessary for resolution of the case).

## III.  ANALYSIS

Plaintiffs argue that the Award should not be confirmed because the arbitrator exceeded his authority by re-framing the arbitrable issue, improperly applying Maryland law, and denying certain discovery.  (ECF No. 226 at 9.)  Plaintiffs also contend that the Arbitrator did not decide any issues related to § 9.2B of the contract.  (*Id*.)  The Court will address these arguments in turn below.

### A.      Framing of the Issues

The Court ordered the parties to arbitrate Plaintiffs' claims arising out of § 2(c) of Exhibit D to Annex A of the DOT, which was the Tax Protection Agreement ("TPA") and states:

> Any merger or consolidation involving the Trust or a
> Subsidiary of the Trust, whether or not the Trust is the
> surviving entity in such merger or consolidation, that results
> in an SRW Partner being required to recognize all or part of
> the gain that would have been recognized for federal income
> tax purposes upon a fully taxable disposition of one or more
> Protected Properties at the time of the SRW Merger shall be
> deemed to be a disposition of the Protected Properties for
> purposes of Section 2(a).

(ECF No. 151-5 at 4.)  Before the Arbitrator, the parties agreed that Plaintiffs were all SRW Partners, and that § 2(c) was not ambiguous.  (*See* ECF No. 226-4.)

The Arbitrator framed the question before him as "did the merger result in Claimants being 'required to recognize' federal income taxable gain"?  (ECF No. 184-1 at 3.)  Because the Arbitrator found that the Series O Unit was a viable alternative to the cash option, he held that Plaintiffs were not required to recognize taxable gain as a result of the 2007 merger.  (*Id*. at 9.)

Plaintiffs contend that the Arbitrator exceeded his authority by redefining the scope of the arbitration from the general issue of whether § 2(c) was breached, to the specific issue of whether the Series O Unit was an adequate alternative for Series A-1 unitholders.  (ECF No. 226 at 10.)  Plaintiffs argue that the issue of whether the Series O was an "adequate alternative" does not "draw its essence" from the TPA and, therefore, the Arbitrator exceeded his authority in so defining the issue.  (*Id.*)  Finally, Plaintiffs contend that the Arbitrator willfully disregarded Maryland law by altering or rewriting an unambiguous term in the contract.  (*Id.* at 13.)

The Court agrees with Plaintiffs' observation that § 2(c) does not explicitly use the term "adequate alternative".  However, § 2(c) plainly states that a merger breaches the TPA only if a unit holder is <u>required</u> to recognize taxable gain.  The Arbitrator reasonably interpreted the plain language of § 2(c) and held that, that if the Series O investment was an adequate alternative, then Plaintiffs were not <u>required</u> to take the cash buyout.  In so framing the issue, the Arbitrator was not adding terms to the contract that were not there.  Rather, he was interpreting the plain language of the contract, which is what Maryland law requires.  *See Dennis v. Fire & Police Emps. Ret. Sys.*, 890 A.2d 737 (Md. 2006) (when interpreting an unambiguous contract, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.").

The Arbitrator's focus on whether the Series O Units were viable investments, and therefore adequate alternatives to the cash buyout option, relates directly to whether Plaintiffs were required to take the cash buyout.  Because this interpretation of the contract draws its essence from the contract language and comports with Maryland

law, Plaintiffs have not shown that the Arbitrator exceeded his authority in framing the issue as he did.

**B.     Limiting Discovery**

Plaintiffs also contend that the Arbitrator erred in limiting discovery to the adequacy of the Series O Units.  (ECF No. 226 at 19.)  Plaintiffs contend that, had the Arbitrator not so limited discovery, they would have been able to gather and present evidence about the intent of the parties in entering into § 2(c) and "what the lawyers negotiating the Merger told the parties about the effect of the Merger on Archstone's tax protection obligations."  (*Id.* at 19-20.)

Had the parties not agreed that § 2(c) was unambiguous, Plaintiffs' argument may have held some weight.  However, the parties stipulated that the contract language was unambiguous and, under Maryland law, "the clear and unambiguous language of an agreement will not give way to what the parties thought that the agreement meant or intended it to mean."  *Auction & Estate Representatives, Inc. v. Ashton*, 731 A.2d 441 (Md. 1999).  Thus, any evidence of the parties' intent in entering the agreement, or what their lawyers advised them as to the effect of the merger, was not relevant to the Arbitrator's interpretation of the plain language of § 2(c).

An arbitration award may be vacated where an arbitrator refused to hear "evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).  Because the parties had stipulated that § 2(c) was unambiguous, evidence related to what the parties or their lawyers thought the contract meant was not pertinent and material to the controversy.  *See Higgins v. Barnes*, 530 A.2d 724 (Md. 1987) ("[E]vidence is ordinarily

inadmissible to vary, alter, or contradict a contract that is complete and unambiguous.").

Accordingly, Plaintiffs have failed to show that the Arbitrator exceeded his authority by

refusing to allow discovery on these issues.

**C.     Arbitrator's Findings with Regard to Section 9.2B**

The final section of the Arbitrator's Opinion focuses on § 9.2B of the contract and

whether Archstone had the authority to merge.  (ECF No. 184-1.)  Plaintiffs contend

that this discussion was outside of the scope of the issue the parties agreed to arbitrate

and, therefore, it has no preclusive effect on the rest of this litigation.  (ECF No. 226 at

17-18.)  Archstone argues that Plaintiffs raised the issue of whether the merger

breached § 9.2B during the Arbitration, and therefore cannot complain about the

Arbitrator including this issue in the Award.  (ECF No. 229 at 11-12.)

While the Arbitrator discussed § 9.2B in the Opinion, he also noted that whether

or not § 9.2B had been breached was "not within the scope of this arbitration."  (ECF

No. 184-1 at 11, n.4.)  Addressing Plaintiffs' request for clarification, the Arbitrator later

wrote that he included the discussion of Section 9.2B "[i]n the interest of a

comprehensive reasoned opinion", but "clearly and unambiguously recognized and

expressly provided that Archstone's breach of Section 9.2B is 'not within the scope of

this Arbitration,' and that a determination of that issue should, if Claimants so choose,

be made in an appropriate forum."  (ECF No. 226-20 (quoting ECF No. 184-4 at 11

n.4).)  The Arbitrator reiterated that "the Opinion's sole conclusion is clear and

unambiguous and needs no clarification: 'Claimants were not required to recognize

taxable gain as a result of the merger and therefore Respondent did not breach Section

2 of the [DOT].'" (*Id.* (quoting ECF No. 184-1 at 12).)

Because the Arbitration twice explicitly stated that he was not intending to make any determinations regarding a breach of Section 9.2B, the Court finds that any analysis of this issue in the Opinion is manifestly *obiter dicta.*  The Arbitrator plainly did not mean for his analysis of Section 9.2B to preclude Plaintiffs from raising any issue in this litigation, and the Court will not interpret the Opinion in such a manner.

Further, the Court finds that the Arbitrator's discussion of Section 9.2B does not affect whether the Opinion can be confirmed.  While the Court will not permit Archstone to argue that the Arbitrator decided any issue related to Section 9.2B, it will still confirm the Arbitration Award.

## IV.  CONCLUSION

For the reasons set forth above, the Court hereby ORDERS as follows:

1.   Archstone's Motion to Confirm Arbitration Final Award in Archstone's Favor (ECF No. 184) is GRANTED;

2.   The Arbitration Award issued by Arbitrator Bruce W. Kaufman is CONFIRMED;

3.   At the time of entry of judgment in this case, judgment shall enter in favor Archstone on Plaintiffs' claims for breach of contract under Section 2 of the TPA;

4.   **The Arbitration Award has no issue or claim preclusive effect with respect to whether Section 9.2B was breached;** and

5.   In accordance with Magistrate Judge Michael J. Watanabe's May 9, 2013 Order Regarding Scheduling Procedure (ECF No. 217), Plaintiffs shall file any Motion to Amend the Complaint within fifteen days of this Order, and shall otherwise

promptly and timely comply with all other deadlines set forth in the referenced

Order of Judge Watanabe.

Dated this 8th day of November, 2013.

BY THE COURT:

William J. Martínez
United States District Judge