**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-CV-02503-WJM-MJW

STEVEN A. STENDER,
HAROLD SILVER, and
INFINITY CLARK STREET OPERATING, L.L.C.,
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ARCHSTONE-SMITH TRUST,
ARCHSTONE-SMITH OPERATING TRUST,
ERNEST A. GERARDI, JR.,
RUTH ANN M. GILLIS,
NED S. HOLMES,
ROBERT P. KOGOD,
JAMES H. POLK, III,
JOHN C. SCHWEITZER,
R. SCOT SELLERS,
ROBERT H. SMITH,
STEPHEN R. DEMERITT,
CHARLES MUELLER, JR.,
CAROLINE BROWER,
MARK SCHUMACHER,
ALFRED G. NEELY,
TISHMAN SPEYER DEVELOPMENT CORPORATION,
RIVER HOLDING, LP,
RIVER ACQUISITION (MD), LP,
RIVER TRUST ACQUISITION (MD), LLC,
ARCHSTONE MULTIFAMILY SERIES I TRUST,
ARCHSTONE ENTERPRISE LP,
ARCHSTONE INC.,
LEHMAN BROTHERS HOLDINGS INC.,
ERP OPERATING LIMITED PARTNERSHIP,
EQUITY RESIDENTIAL, and
AVALONBAY COMMUNITIES, INC.

Defendants.

---

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE 2007 DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

---

As the 2007 Defendants demonstrated in their Motion to Dismiss (ECF No. 288) (the "Motion"), the allegations in the SAC were asserted years after multiple dismissals of prior versions of the same allegations, denials of motions for reconsideration, and, most recently, a loss by Plaintiffs in arbitration.[1] Defendants' Motion demonstrated that under this Court's prior rulings and controlling authority, each of the claims in the SAC fail and should be dismissed. In their opposition brief (ECF No. 299) (the "Opposition"), Plaintiffs ignore prior rulings of this Court and other authority that foreclose them from restating the same claims. Instead, they simply repeat arguments that this Court has already rejected and cite irrelevant authority.

**Breach of Fiduciary Duty Claims.** As to Causes I-II asserted against Archstone as trustee of ASOT, this Court has already foreclosed those claims, holding that Plaintiffs have no standing to assert them directly. Plaintiffs do not even dispute that breach of fiduciary duty claims against a Maryland REIT trustee can *only* be asserted derivatively under the controlling Maryland statute. Nor do Plaintiffs dispute that they are asserting Causes I-II against Archstone as sole trustee of a REIT directly. Instead, six years after identical claims were dismissed with prejudice, Plaintiffs for the first time argue that this Court ignore Maryland statutory corporate law and rely on the general law of trusts. That argument comes years too late, as Plaintiffs have acknowledged from the very beginning of this action that the Maryland corporate code controls here, and two other judges of this Court have relied on statutory corporate law to reject Plaintiffs' claims. Moreover, Plaintiffs never even attempt to explain why the Maryland corporate

[1] Capitalized terms used but not defined herein shall have the meaning set forth in Defendants' Motion.

code does not bar their claims, or otherwise distinguish this Court's holdings in *Stender I-IV*. *See infra* Point I.A.

As to Causes III-IV asserted against Archstone as majority owner, Plaintiffs do not meaningfully respond to Defendants' showing that (i) this Court previously held that the only act attributable to Archstone as majority owner is its vote to approve the 2007 Transaction; and (ii) Archstone did not act ultra vires or in bad faith when it took that action. Instead, Plaintiffs rest their claims on a verbatim recital of the same laundry list of complaints about Archstone's actions that this Court already has held were *not* an exercise of majority control and that are insufficient to support a breach of fiduciary duty claim under Maryland law. *See infra* Point I.B.

**Breach of Contract Claims.** Defendants demonstrated that Plaintiffs' breach of contract claim should be dismissed because it simply reasserts a claim that this Court dismissed in *Stender I*—that Plaintiffs had a right to vote on the 2007 Transaction. In their Opposition, Plaintiffs rely on the general anti-amendment provisions of the DOT as the purported basis for their claim, but fail to explain why their claim is not predicated on consummating the 2007 Transaction, a merger that Archstone had every right to approve (and the Plaintiffs had no right to veto), under the settled law of this case. Simply put, this claim was disposed of six years ago and should be dismissed again here. *See infra* Point II.

**Unjust Enrichment Claim.** Plaintiffs' effort to "relate-back" their time-barred claim for unjust enrichment to the CAC must fail. Plaintiffs ignore that several parties they now seek to mount the claim against were not even named in the CAC. A claim

against a new party cannot relate back to an earlier complaint when that party was not on notice of the earlier complaint. In any event, Plaintiffs' time-barred claim fails on the merits. There is nothing "unjust" about the consideration Plaintiffs received in connection with the 2007 Transaction because it was exactly what they were entitled to under the DOT. Plaintiffs, here, received the same consideration as every other equity holder of Archstone, in a transaction that was approved by over 90% of Archstone's stakeholders. (Mot. at 28.) Accordingly, Plaintiffs are unable to plead, as they must, that Defendants were in any way unjustly enriched at their "expense." *See infra* Point III.

## I. Plaintiffs' Opposition Confirms that Causes I-IV Should Be Dismissed.

In the Motion, Defendants demonstrated that Plaintiffs' breach of fiduciary duty claims should be dismissed because, under *Stender I* and well-settled Maryland law, Plaintiffs (i) lack standing to assert their claims against Archstone as sole trustee of ASOT (Causes I-II), and (ii) fail to plead facts that are remotely sufficient to support their claims against Archstone as majority owner (Causes III-IV). Plaintiffs' Opposition supports Defendants' showing.

### A. The Fiduciary Duty Claims Against Archstone As Sole Trustee Are Not Permitted as Matter of Law.

In the Motion, Defendants demonstrated, citing this Court's ruling in *Stender I*, that Causes I and II of the SAC should be dismissed because Maryland law only permits fiduciary duty claims against a REIT trustee through derivative actions. (Mot. at 18.) Specifically, *Stender I* established, and Defendants explained that:

- section 2-405.1(g) of the Maryland corporate code expressly limits the enforcement of fiduciary duties owed by Maryland corporate directors to an action "by the corporation or in the right of the corporation";

- under section 8-601.1 of the corporate code, "Sections . . . 2-405.1(d) through (g) . . . *shall* apply to real estate investment trusts" such as Archstone;[2] and
- Plaintiffs are asserting their breach of fiduciary duty claims against Archstone as sole trustee *directly*, not derivatively on behalf of the REIT.

In their Opposition, Plaintiffs dispute none of this. Instead, Plaintiffs now attempt to bypass that statutory framework entirely by claiming for the first time—after three decisions of this Court holding that Plaintiffs lack standing to assert these claims directly—that they can avoid the limitations imposed by the Maryland General Assembly because, as "beneficiaries" of a trust, their trustee claims survive under general trust law. (Opp'n at 11-13.) That argument can be easily disposed of.

First, Plaintiffs' reliance on general trust law does nothing to explain why the Maryland corporate code does not automatically bar their direct claim. Indeed, Plaintiffs relied on virtually identical allegations in Count VI of the proposed complaint they filed after this Court dismissed the trustee claim with prejudice in *Stender I*. *Compare* SAC ¶¶ 156-64, *with* Proposed Am. Compl. ¶¶ 198-205 (ECF No. 87-1.) This Court refused to accept that complaint in *Stender II* because it "contain[ed] claims that are clearly forbidden by this order, such as a direct claim for breach of fiduciary duty based on managerial conduct during the merger." (ECF No. 101 at 10 n.12.) Plaintiffs cannot circumvent Maryland corporate law by invoking of the law of trusts.[3]

---

[2] In a REIT, "[t]he beneficiaries are 'shareholders' who have voluntarily decided to invest in the REIT for various economic (including tax) reasons, unlike the beneficiaries of many other types of trusts," and therefore "minimum standards of conduct for the trustees and officers of the REIT are similar to [directors in] Maryland corporations." James J. Hanks, Jr., *Maryland Corporation Law* § 17.16 at 464 (2013 ed.).

[3] *See Jolly Roger Fund LP v. Sizeler Property Investors, Inc.*, 2005 WL 2989343, at *5 (D. Md. Nov. 3, 2005) (holding that fiduciary duties run only to the corporation because REIT trustees "occupy a fiduciary relation to the corporation" only and "are not trustees for the individual stockholders" (citing *Waller v. Waller*, 49 A.2d 449, 454 (Md. App. 1946)); *see also Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006, 1016-17 (S.D.N.Y. 1984) (holding "it is appropriate to judge the conduct of REIT trustees by the

Second, Plaintiffs' end run around the Maryland corporate code is six years too late. In 2008, Plaintiffs joined issue without once mentioning the law of trusts. (ECF Nos. 40 at 18-30.) After this Court dismissed that claim with prejudice, Plaintiffs did not once mention that the claim was purportedly viable under a separate body of law in any of their three successive motions for reconsideration or their two motions to amend designed to demonstrate amendment was not futile. (ECF Nos. 78, 96, 102, 105, 129.) Plaintiffs' eleventh-hour attempt to circumvent the Maryland corporate code cannot save Causes I-II from dismissal. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1199 (10th Cir. 2006) (noting it is not common "to give litigants the proverbial second bite at the apple" when they fail to raise theories of liability in prior motions).

At bottom, Plaintiffs urge the Court to create an exception to the Maryland corporate code that would swallow its application in any case involving a REIT. There is no basis to do so. *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 138 (2004) (courts should not construe statutes in a manner that "leads to absurd or futile results").

**B. The Fiduciary Duty Claims Against Archstone as Majority Owner Fail Under the Law of This Case.**

In their Motion, Defendants demonstrated that (i) the only act alleged in the SAC that is attributable to Archstone as majority owner was its vote in favor of the 2007 Transaction; and (ii) Plaintiffs have not alleged any facts demonstrating that Archstone's vote was ultra vires or in bad faith. (Mot. at 19-24.)

Plaintiffs' sole response is that Defendants cite "no authority" supporting its

standards generally applied to corporate fiduciaries" because "the trustees of a REIT are functionally more similar to corporate directors than to ordinary trustees").

position that the vote is the only act Archstone performed as majority owner. (Opp'n at 18). Plaintiffs are wrong: that is the law of this case. Defendants expressly relied on *Stender I*, where *this Court* held that "the only alleged act recited in either counts two or three [of the CAC] committed by Archstone REIT in its capacity as majority shareholder—as opposed to as 'sole trustee' of [ASOT]—is 'voting in favor of the [m]erger.'" (ECF No. 76 at 40.) Substantially similar allegations regarding Archstone's conduct in "negotiating, formulating, and implementing the Merger" appeared in Counts II and III of the CAC. (CAC ¶ 198.) In *Stender I*, this Court held that those other allegations "relate[d] to Archstone REIT's actions in its managerial capacity as 'sole trustee' of [ASOT]," not its capacity as majority owner. (ECF No. 76 at 41-42.)[4]

Unable to point to any well-pleaded allegations that Archstone acted "ultra vires, illegally, or in bad faith" in approving the 2007 Transaction on the terms it did, Plaintiffs try to alter the legal standard. Plaintiffs simply urge the Court to adopt a broader view of what might suffice to sustain Causes III-IV by relying on general expressions of the relationship between majority and minority shareholders in corporate transactions distinct from the type at hand.[5] But here again, Plaintiffs repeat an argument that was

[4] Unable to state a direct claim against Archstone for actions it took in its exercise of managerial control over ASOT as trustee, Plaintiffs rely on the Delaware Supreme Court's decision in *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983), for the view that the Court should consider "[a]ll of the Archstone REIT's actions controlling [ASOT]" for purposes of their majority oppression claims. (Opp'n at 18.) However, the "entire fairness" standard from *Weinberger* that Plaintiffs are ostensibly referencing is one of the few notable aspects of Delaware law that Maryland courts refuse to apply. *See, e.g.*, *Hudson v. Prime Retail, Inc.*, 2004 WL 1982383, at *11 n.13 (Md. Cir. Ct. Apr. 1, 2004) ("Unlike Delaware law, in Maryland the business judgment rule applies even to directors' change-in-control decisions."); *see also* Hanks § 6.6 at 186 n. 157 (explaining rejection of *Weinberger*). Plaintiffs' reliance on *Reis v. Hazelett Strip-Casting Corp.*, 28 A. 3d 442 (Del. Ch. 2011), which applies *Weinberger*, is similarly inapposite. (Opp'n at 17.)

[5] *Birnbaum v. SL & B Optical Centers, Inc.*, 905 F. Supp. 267 (D. Md. 1995), did not even involve a change-in-control transaction, *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365 (Md. Ct. Spec. App. 2005), arose in the context of a closely-held entity, *Twenty Seven Trust v. Realty Growth Investors*, 533

already rejected by this Court: *Stender I* held that the Maryland Court of Appeals in *Homer* set forth the controlling 'ultra vires or bad faith' standard for claims, like Plaintiffs', alleging that a vote in favor of a merger resulted in "inadequate consideration." (ECF No. 76 at 41.)[6] Indeed, Plaintiffs rely on many of the same cases they used when briefing *Stender I*. (ECF No. 40 at 31 (citing *Lerner*, *Cooperative Milk*, and *Twenty Seven Trust*).)

Here, Plaintiffs simply insist, without more, that Archstone oppressed A-1 Unitholders by engaging in the alleged "acts of oppression" found in paragraph 183 of the SAC. (Opp'n at 16-17.) But reciting this laundry list from the SAC ignores that the Court already ruled that nearly identical allegations from the CAC sounded in contract, not tort, and thus do not support a fiduciary duty claim. (Mot. at 20-21.) Plaintiffs also ignore Defendants' showing that none of the alleged actions qualifies as bad faith because Plaintiffs do not plead those actions were adverse to the company as a whole. (Mot. at 21-24.) The only allegations Plaintiffs identify in the Opposition as purportedly establishing bad faith do not remotely suggest that Archstone's interests conflicted with those of its public shareholders (SAC ¶¶ 18, 109, 186 (describing "A-1 Unitholders" or "Plaintiffs" only)), or recite various forms of incentive compensation (*id.* ¶¶ 127-31, 135-

F. Supp. 1028 (D. Md. 1982) was predicated on a tender offer, and *Lerner v. Lerner Corporation*, which Plaintiffs raised in *Stender I*, involved a reverse stock split. As this Court observed in *Stender IV*, the 2007 Transaction was "substantively different" from a pure cash-out merger, let alone the preceding types of corporate events. (ECF No. 114 at 9.)

[6] Plaintiffs concede that their majority oppression claim continues to be based on the fact that "Defendants offered inadequate consideration to minority shareholders for their A-1 Units." (Opp'n at 17.) Indeed, the paragraphs cited by Plaintiffs in their Opposition allege that the decrease in the offer price "represent[ed] the value of the obligations owed to A-1 Unitholders" and that Archstone "prevented A-1 Unitholders from understanding the full value of their A-1 Units" and, among other things, "affirmatively disregard[ed] the . . . value differences" between ASOT's various equity holders. SAC ¶¶ 178, 182-83.

36) that, as Defendants demonstrated, support the conclusion that the interests of Archstone's board with its shareholders were aligned, not divergent. (Mot. at 23.)

**II. Plaintiffs' Contract Claims Should Be Dismissed (Causes V-VII).**

In their Motion, Defendants demonstrated that Cause V should be dismissed because it attempts to use general amendment provisions from the DOT to reassert the already dismissed claim that Plaintiffs had a right to vote on the 2007 Transaction. (Mot. at 24-25.) Ignoring this reality, Plaintiffs refer to the general amendment provisions and contend that "[t]here can be no doubt . . . the SAC alleges that certain Defendants breached the DOT in a number of ways." (Opp'n at 22.) But the SAC in fact alleges the already rejected theory that the breach of the DOT is based on the "consummation of the Merger" because Archstone and ASOT "were contractually bound to obtain the A-1 Unitholders' consent for the Merger," (SAC ¶ 205)—not that it failed to obtain consent for discrete, pre-merger amendments to the DOT. Thus, the allegations of the SAC, accepted as true, are incompatible with the law of this case that "mergers need only be approved 'by the Unitholders holding at least a majority of the then outstanding Units (*including any Units held by [ASOT]*).'" (ECF No. 76 at 39.)[7]

Defendants' argument with regard to Causes VI and VII for tortious interference with contract and civil conspiracy is not, as Plaintiffs claim, "limited to the position that

[7] To the arguable extent Plaintiffs allege in paragraph 203 of the SAC that a separate provision in section 9.2B was violated because "[t]he Merger Agreement did not contain any provision reflecting that the successor Parent REIT executed and delivered a counterpart to Annex A in which such Parent REIT successor agreed to be fully bound by [the DOT]," that argument fails. First, there is no provision in Section 9.2B, or anywhere else in the DOT, that requires a merger agreement to evidence that a successor REIT complied with Section 9.2B. *See* DOT, Annex A § 9.2B. Second, as Plaintiffs concede, the successor to Archstone assumed all of Archstone's liabilities. (SAC ¶ 104.) Finally, Plaintiffs cannot recover on that claim because they have not alleged—nor have they suffered—any damages or harm. *See Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011) (contractual obligation, breach, and damages are the elements of a breach of contract cause of action under Maryland law).

the failure of the breach of contract claim" dooms them. (Opp'n at 23.) While that is true, the Motion also showed that Plaintiffs are unable to establish the necessary element of "wrongful" or "unlawful" conduct because the 2007 Transaction—the event alleged to breach Plaintiffs' rights—was specifically authorized by the DOT and Plaintiffs expressly agreed that Archstone was under no obligation to consider their separate interests in connection with a merger. (Mot. at 26.) Plaintiffs neither address those DOT provisions nor attempt to distinguish the acts as "wrong" or "unlawful." *See United States v. Montes-Ramos*, 347 F. App'x 383, 393 (10th Cir. 2009) ("Where, as here, a defendant makes a clear argument in support of a motion . . . and the [opposing party] fails to respond to that argument" it is considered "waived").[8]

**III. Plaintiffs' New Unjust Enrichment Claim Should Be Dismissed (Cause VIII).**

Defendants have shown that Plaintiffs' new claim for unjust enrichment is out of time and without merit. (Mot. at 26-28.) In their Opposition, Plaintiffs do not dispute that the governing statute of limitations is three years or that their new claim is untimely under that limitations period. Instead, they ask this Court to find that their new claim "relates back" to the CAC filed over six years ago in 2007. (Opp'n at 25.) It is Plaintiffs' burden to demonstrate the basis for a relation back, *Lister v. SMG Mgmt.*, 2012 WL 2993889, at *3 (D. Kan. July 20, 2012), and they fail to carry that burden. The River

[8] Plaintiffs appear to suggest in their Opposition that all of the 2013 Defendants are liable as "successors-in-interest" for the fiduciary duty and contract claims asserted against the 2007 Defendants. (Opp'n at 1.) That is simply not true. As a threshold matter, Plaintiffs are improperly attempting to amend their complaint, as the SAC alleges only that "Archstone, Inc. is a successor-in-interest to the Archstone REIT and UPREIT." (SAC ¶ 139.) Moreover, none of the Archstone Entities was legally succeeded by Defendants Lehman Brothers Holdings, Inc., ERP Operating Limited Partnership, Equity Residential, or AvalonBay Communities Inc. in connection with the 2007 Transaction, the 2013 Transaction, or otherwise, given that Archstone, Inc. continues to exist as a going concern. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.").

Entities were not named in the CAC so obviously they could not have been, in the words of the case Plaintiffs cite, "notified of [the] litigation" in 2007, *Gorsuch, Ltd. V. Wells Fargo Nat'l Bank Ass'n*, 2013 WL 6925132, at *11 (D. Colo. Dec. 13, 2013).[9]

More fundamentally, even if the claim was timely, dismissal is required in favor of all Defendants because Plaintiffs' Opposition confirms it is not cognizable. The fundamental premise of an unjust enrichment claim is that a defendant was unjustly enriched at a plaintiff's expense. (Mot. at 28.) Plaintiffs affirmatively concede they were not entitled to the initial offer price of $64. (Opp'n at 27.) Plaintiffs also do not dispute that the consideration they received was exactly what they were contractually entitled to under the DOT. (Mot. at 28.) Moreover, Plaintiffs do not dispute that they received the same consideration as all other equity holders of Archstone, in a transaction that was approved by over 90% of those equity holders. Finally, the arbitration conclusively determined that there was no further payment owing to them under their tax protection agreement. In these circumstances, Plaintiffs would be the ones unjustly enriched were their claim allowed to proceed.

**CONCLUSION**

For all the foregoing reasons, and those set forth in Defendants' Motion, Causes of Action I-VIII and XIII-XV should be dismissed with prejudice and in their entirety.

[9] Although the CAC named Tishman as a party, Plaintiffs have evidenced an intent not to pursue this claim against Tishman by failing to assert it in September 2010, when they moved to add other state law claims before the three year statute of limitations expired. (Mot. at 27.)

Respectfully submitted this 18th day of April, 2014.


*/s/* Jonathan D. Polkes________
Jonathan D. Polkes
Elizabeth S. Weiswasser
Ashish D. Gandhi
Caroline Hickey Zalka
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
jonathan.polkes@weil.com
elizabeth.weiswasser@weil.com
ashish.gandhi@weil.com
caroline.zalka@weil.com

-and-

Frederick J. Baumann
Alex C. Myers
LEWIS ROCCA ROTHGERBER LLP
1200 17th Street, Suite 3000
Denver, Colorado 80202-5855
(303) 623-9000
fbaumann@lrrlaw.com
amyers@lrrlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of April, 2014, I electronically filed **THE REPLY IN FURTHER SUPPORT OF THE 2007 DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Kenneth A. Wexler, Esq.
Kara A. Elgersma, Esq.
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
kaw@wexlerwallace.com
kae@wexlerwallace.com

Lee Squitieri, Esq.
SQUITIERI & FEARON, LLP
32 E. 57th Street, 12th Floor
New York, New York 10022
(212) 421-6492 - Telephone
leesfclasslaw.com

*s/ Jonathan D. Polkes*
Jonathan D. Polkes