**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 07-cv-02503-WJM-MJW

STEVEN A. STENDER,
HAROLD SILVER, and
INFINITY CLARK STREET OPERATING, L.L.C., on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

ARCHSTONE-SMITH OPERATING TRUST, *et al.*,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

---

Plaintiffs Steven A. Stender, Harold Silver, and Infinity Clark Street Operating (collectively "Plaintiffs") bring this putative class action against Defendants Archstone-Smith Operating Trust ("Archstone") and others (collectively "Defendants") arising out of a 2007 transaction in which the publicly held Archstone-Smith Real Estate Investment Trust ("Archstone REIT") was taken private. (Sec. Am. Compl. ("SAC") (ECF No. 266) pp. 2-4.)

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint for Failure to State a Claim ("Motion"). (ECF No. 288.) For the reasons set forth below, the Motion is granted in part and denied in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

As the Court has previously noted, this case has a long and tortured history. In this Order, the Court will recite only those portions of the procedural history necessary

to resolve the instant Motion.

Plaintiffs initiated this action on November 30, 2007 by filing a class action Complaint alleging breach of contract and breach of fiduciary duty. (ECF No. 1.) The case was originally assigned to former United States District Judge Edward Nottingham. (ECF No. 2.) In lieu of an answer, Defendants moved to dismiss all claims, arguing that some claims were subject to an arbitration clause and others failed to state a claim upon which relief could be granted. (ECF No. 29.) On September 30, 2008, Judge Nottingham granted Defendants' motion, finding that Plaintiffs' claim related to the tax deferral agreement was subject to arbitration ("*Stender I*"). (ECF No. 76.) Judge Nottingham also found that Plaintiffs failed to state a claim for breach of fiduciary duty and dismissed those claims with prejudice. (*Id.*)

Plaintiffs moved for reconsideration of the dismissal order arguing that, because *Stender I* found that Plaintiffs had failed to allege sufficient facts to state a claim, they should be afforded the opportunity to file an amended complaint. (ECF No. 78.) While this motion was pending, the case was reassigned to United States District Judge Robert E. Blackburn. (ECF No. 81.) Judge Blackburn granted Plaintiffs' motion to reconsider, and ruled that Plaintiffs should be allowed to file an amended complaint. (ECF No. 101.) However, Judge Blackburn did not accept Plaintiffs' tendered amended complaint at that time, instead administratively closing the case pending conclusion of the arbitration of the claim related to the tax deferral agreement. (*Id.*)

Upon the undersigned's appointment, the case was again reassigned. (ECF No. 131.) The Court permitted Plaintiffs to file an amended complaint, but continued the stay of litigation until the arbitration was resolved and administratively closed the case.

(ECF Nos. 150, 159.)

Upon conclusion of the arbitration, the Court reopened this matter. (ECF No. 188.) On Defendants' motion, the Court confirmed the arbitrator's award in favor of Defendants. (ECF Nos. 184, 243.) Plaintiffs then filed their Second Amended Complaint ("SAC"), which is the operative pleading in this case. (ECF No. 266.) In response, Defendants filed the instant Motion. (ECF No. 288.)

The pertinent facts pled in the SAC are as follows. Up until early 2007, Defendant Archstone REIT was one of the largest publicly held real estate investment trusts[1] in the United States. (SAC ¶ 44.) The Archstone REIT held nearly all of its assets in the Archstone UPREIT[2]. (*Id.*) The Archstone REIT was the sole trustee of the Archstone UPREIT, and was responsible for its strategic direction, as well as management and administration of all the properties the Archstone UPREIT owned. (*Id.* ¶ 83.) Archstone REIT owned nearly 90 percent of Archstone UPREIT's beneficial interests in the form of A-2 Common Units. (*Id.* ¶¶ 44-45.) The Archstone UPREIT was governed by a Declaration of Trust ("DOT").

In the late 1990s, Plaintiffs invested in various Archstone-predecessor UPREITS,

---

[1] A real estate investment trust is an entity that owns and manages income-producing real estate such as apartments, offices, and industrial space. (SAC ¶ 69.) A REIT generally does not pay corporate income taxes, which allows investors to enjoy the advantages of the corporate form (including limited liability and transferability of shares) without incurring the costs of double taxation. (*Id.* ¶¶ 70-71.)

[2] UPREIT stands for umbrella partnership real estate investment trust. (SAC ¶ 72.) An UPREIT is a REIT formed by combining properties from existing limited partnerships. (*Id.*) The original partners exchange properties held by the partnerships for an interest in a new transitional operating partnership. (*Id.*) Simultaneously, a corporation—usually a REIT—contributes cash that it raised in a public offering in exchange for a general partnership interest in the UPREIT. (*Id.*) The resulting partnership is a trust called an UPREIT. (*Id.*)

3

receiving what are referred to as A-1 units. (SAC ¶¶ 5, 76.) As of May 2007, Plaintiffs and the proposed class held approximately 11 percent of the Archstone UPREIT in the form of A-1 units. (*Id*. ¶ 45.) The A-1 units were not investments in the Archstone REIT, but were common units in the Archstone UPREIT. (*Id*. ¶ 5.) Plaintiffs chose to invest in the A-1 units of the Archstone UPREIT in exchange for the contractual promise that, for some period of time after the closings of their real estate holdings, the UPREIT could not dispose of any interest in the properties in a manner that resulted in Plaintiffs realizing any taxable gain. (*Id*. ¶ 76.) If any such gain was realized, the UPREITs were obligated to reimburse Plaintiffs in that amount. (*Id*.) These contractual provisions were referred to as "tax protection agreements". (*Id*.) The tax protection agreements allowed Plaintiffs to obtain the benefits of a broader portfolio of investments, without compromising their ability to plan for the tax consequences resulting from the disposition of any property. (*Id*. ¶ 77.)

Plaintiffs were also drawn to contribute their capital to Archstone UPREIT because they would be able to redeem their units at will for cash or tradable common stock. (*Id*. ¶ 78, 90.) Plaintiff also found favorable the DOT's requirement that Archstone UPREIT pay out 100 percent of its taxable income, because this afforded the investor a regular cash flow. (*Id*. ¶¶ 78-79.)

On May 2, 2007, Defendant Tishman-Lehman Partnership ("TLP") submitted a written indication of interest seeking to acquire the Archstone REIT and UPREIT for a cash purchase price of $64 per share. (SAC ¶ 92.) Two weeks later, Archstone REIT's board of trustees became aware of TLP's concerns regarding the "magnitude of the

built-in gain associated with certain of Archstone's properties that are subject to tax protection agreements with operating trust unitholders and the magnitude of the increase in property taxes as a result of the transaction." (*Id.* ¶ 93.) On May 23, 2007, TLP rescinded its original offer of $64 per unit, and instead offered a price of $60 per unit. (*Id.* ¶ 96.) This price reduction was primarily driven by the magnitude and scope of the tax protection agreements. (*Id.*) Archstone REIT negotiated with TLP over the purchase price, and they ultimately agreed on $60.75 per unit, conditioned on TLP's refusal to pay out a third-quarter dividend that was owed to A-1 unit holders. (*Id.* ¶ 99.)

On May 29, 2007, Archstone REIT publicly announced that it had signed a contract to merge with TLP ("Merger Agreement") in a transaction valued at approximately $22.2 billion dollars (the "Merger"). (SAC ¶ 100.) The Merger Agreement terminated the A-1 units and required holders thereof to choose between two options: a cash payout of $60.75 per unit or the same number of a newly-created Series O unit. (*Id.* ¶ 105.) The Merger Agreement stated that River Acquisition (MD), LP assumed "all properties, rights, privileges, purposes and powers and debts, duties and liabilities" of the Archstone REIT. (*Id.* ¶ 104.) Because the Merger Agreement eliminated the A-1 shares, River Acquisition assumed nothing with regard to the A-1 unit holders. (*Id.*) Plaintiffs contend that the Series O units had inferior economic characteristics to the A-1 units, including the possibility of the Series O units lacking tax deferred status. (*Id.* ¶ 122.) Plaintiffs allege that the Merger failed to "acknowledge and account for the superior nature of the A-1 units over the A-2 units." (*Id.* ¶ 126.)

After the Merger, Archstone REIT caused billions of dollars in assets held by

Archstone UPREIT to be transferred to itself. (SAC ¶ 124.) The Archstone REIT then merged with the Tishman-Speyer Partnership, which became the sole trustee of the Archstone UPREIT. (*Id*. ¶ 125.) Plaintiffs allege that the "sole purpose of leveraging the assets was to permit an impermissible distribution to the A-2 Unitholders to fund the acquisition of the Archstone REIT." (*Id*.)

On these facts, Plaintiffs' SAC brings the following claims: breach of fiduciary duty against Archstone REIT in both its capacity as trustee of the Archstone UPREIT and as majority shareholder; aiding and abetting the breach of fiduciary duty against the Tishman-Speyer Partnership; breach of contract against the Archstone UPREIT and the Archstone REIT; tortious interference with contract against River Acquisition (MD) LP and the Tishman Speyer Partnership; civil conspiracy against Tishman-Speyer, and unjust enrichment against River Acquisition (MD) LP and Tishman-Speyer. (SAC pp. 44-60.)

On March 4, 2014, Defendants filed the instant Motion which seeks dismissal of each of these claims. (ECF No. 288.) Plaintiffs filed a response (ECF No. 299), and Defendants filed a reply (ECF No. 305.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.  ANALYSIS

Defendants move to dismiss all of the claims brought in Plaintiffs' SAC. The Court will address each in turn below.

**A.  Breach of Fiduciary Duty—Archstone REIT as Trustee (Claims 1 & 2)**

In Claim One, Plaintiffs allege that Archstone REIT breached fiduciary duties that it owed to Plaintiffs as sole trustee of the Archstone UPREIT. (SAC ¶¶ 156-164.) Plaintiffs allege that Archstone REIT engaged in improper self-dealing, and failed to take appropriate steps to ensure that the A-1 unitholders' rights were protected during the Merger. (*Id.*) Claim Two alleges that the Individual Defendants (who are Board members of the Archstone REIT) and Tishman-Speyer aided and abetted the breach of fiduciary duties. (*Id*. ¶¶ 165-173.)

Defendants move to dismiss these claims on the grounds that Plaintiffs lack

standing.[3] (ECF No. 288 at 18.) Defendants cite the Maryland corporate code governing duties owed by corporate officers, which states "[n]othing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation." Md. Code Ann. Corps. & Ass'ns § 2-405.1(g). In response, Plaintiffs contend that Maryland corporate law is irrelevant, because they are bringing their claims under Maryland trust law. (ECF No. 299 at 14-15.)

"[T]he trustees of a REIT are functionally more similar to corporate directors than to ordinary trustees." *Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006, 1016 (S.D.N.Y. 1984) (citing 16A Fletcher Cyclopedia of the Law of Private Corporations § 8249, at 619 (R. Eickhoff rev. ed. 1979)); *see also* Stand. Fed. Tax Rep. (CCH) ¶ 4099F.015, at 46,493 (1982) (a REIT, "in addition to central management, must possess all other necessary attributes that would, except for REIT Code provisions, cause it to be taxed as a corporation"). Maryland courts consistently apply Maryland corporate law to issues involving REITs. *See, e.g., Kramer v. Liberty Prop. Trust*, 968 A.2d 120, 130-31 (Md. 2009) (looking to the Maryland corporate code to determine whether the trustee of a REIT was entitled to an advance of expenses for litigation against him); *Jolly Roger Fund LP v. Sizeler Prop. Inv.*, 2005 WL 2989343, at *4-5 (D. Md. Nov. 3, 2005) (treating a REIT as a corporation for purposes of discussing duties owed by the directors and trustee).

---

[3] Defendants also allege that the law of the case bars these claims. (ECF No. 288 at 16-17.) Because the Court finds that Plaintiffs lack standing to asserts these claims, it need not address Defendants' alternate arguments.

In fact, the statutory provisions governing REITs in Maryland explicitly incorporate many provisions applicable to corporate governance, and state that they do not apply to businesses operating as "trusts" other than "real estate investment trusts". *See* Md. Code Ann. Corps. & Ass'ns § 8-301 (incorporating the power to indemnify or advance payments to officers and employees pursuant to § 2-418); *Id*. § 8-103 ("This title does not limit present law as it applies to the creation of or doing of business in the State by a 'business trust' other than a Maryland real estate investment trust."). Given this authority, the Court concludes that a breach of fiduciary duty claim brought against the trustee of a REIT is governed by Maryland corporate law, rather than trust law. Pursuant to Maryland corporate law, Plaintiffs lack standing to bring a direct action to enforce Defendants' fiduciary duties. *Id*. § 2-405.1(g).

Moreover, despite multiple opportunities to raise the issue in earlier filings, Plaintiffs' opposition brief is the first time in the long and tortured history of this case that they have purported to bring their breach of fiduciary duty claims under Maryland trust law. Plaintiffs wholly failed to mention Maryland trust law in their opposition to Defendants' original Motion to Dismiss, or in the motions to reconsider that they subsequently filed. (*See* ECF No. 40 at 22; ECF No. 79; ECF No. 105.) The change in strategy is not based on newly discovered fact; rather, Plaintiffs are attempting to put forth a new legal argument that was known or should have been known to them at the time of their earlier filings. The fact that Plaintiffs were given leave to file an amended complaint, which Defendants then again moved to dismiss, does not give Plaintiffs the chance to raise entirely new legal arguments that they failed to raise in the first instance. *See United States v. Campbell*, 372 F.3d 1179, 1182 (10th Cir. 2004)

(remand for additional proceedings does not give the Government "a second bite at the apple" to "make the record that it failed to make in the first instance"); *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) ("Particularly with today's crowded dockets, a litigant given one good bite at the apple should not have a second.").

For both of these reasons, the Court finds that Plaintiffs have failed to establish that they have standing to pursue a direct breach of fiduciary duty claim against Archstone REIT in its capacity as trustee of Archstone UPREIT. Additionally, because Claim Two is dependent on Claim One, it must be dismissed as well. *See Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 665 A. 1038, 1050 (Md. 1995) ("[C]ivil aider and abettor liability . . . requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable."). As such, Defendant's Motion to Dismiss is granted as to Claims One and Two.

## B.     Breach of Fiduciary Duty—Archstone REIT as Majority Shareholder (Claims 3 & 4)

In Claim Three, Plaintiffs allege that Archstone REIT breached fiduciary duties that it owed to Plaintiffs as majority shareholder of the Archstone UPREIT. (SAC ¶¶174-190.) Plaintiffs allege that Archstone REIT engaged in improper self-dealing, and failed to take appropriate steps to ensure that the A-1 unitholders' rights were protected during the Merger. (*Id*.) Claim Four alleges that the Individual Defendants and Tishman-Speyer aided and abetted the breach of fiduciary duties. (*Id*. ¶¶ 165-173.)

Defendants raise a variety of arguments in support of their Motion to Dismiss these claims. The Court will address each in turn below.

1.  Law of the Case

Defendants first argue that Plaintiffs' breach of fiduciary duty claim brought against Archstone REIT in its capacity as majority shareholder is barred by the law of the case doctrine. (ECF No. 288 at 19-21.) Defendants contend that, in *Stender I*, Judge Nottingham held that the only action taken by Archstone REIT in its capacity as majority shareholder (as opposed to its capacity as trustee of the UPREIT) was its vote to approve the Merger, and that, because Archstone REIT was explicitly authorized to merge by the DOT, this act could not be a breach of any fiduciary duty. (*Id.* (citing ECF No. 76 at 38-39).)

"The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). This doctrine is designed to promote finality and prevent re-litigation of previously decided issues, but does not serve to limit a court's power. *Wilson v. Meeks*, 98 F.3d 1247, 1250 (10th Cir. 1996). The Tenth Circuit has declined to apply the doctrine to interlocutory or non-final orders, as "district courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007); *see Elephant Butte Irrigation Dist. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge." (quotation omitted)).

"[T]he [law of the case] doctrine does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine." *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993). "The relevant prejudice is limited to lack of sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).

Given the procedural history of this action, the Court finds that the law of the case doctrine does not apply. Judge Nottingham's order dismissing Plaintiffs' claims was not a final order, as Judge Blackburn granted a Motion to Reconsider and allowed Plaintiffs to file an amended complaint. (*See* ECF No. 101.) The case was subsequently reassigned to the undersigned, Plaintiffs were permitted to file another amended complaint, and Defendants again moved to dismiss. (*See* ECF Nos. 131, 150, 266, 288.) The Court finds that Defendants had notice that the Court would reconsider the prior rulings in conjunction with the factual allegations contained in Plaintiffs' SAC, and, as Defendants were allowed to file a renewed motion to dismiss, they had a full opportunity to be heard on the issue. As such, the Court concludes that it is not bound by the findings or conclusions entered by Judge Nottingham in *Stender I*.

2.  <u>Sufficiency of Factual Allegations</u>

Defendants next contend that the SAC fails to allege sufficient facts to show that Archstone REIT breached any fiduciary duty owed by a majority shareholder. (ECF No. 288 at 21-24.)

Under Maryland law, stockholders are "not trustees or quasi-trustees for each

other." *Shaw v. Davis*, 28 A. 619, 622 (Md. 1894). However, "when majority stockholders use their voting power for their own benefit, for some ulterior purpose adverse to the interests of the corporation and its stockholders as such, they thereby become fiduciaries and violate their fiduciary obligations." *Cooperative Milk Serv., Inc. v. Hepner*, 81 A.2d 219, 219 (Md. 1951); *Baker v. Standard Lime & Stone Co.*, 100 A.2d 822, 823 (Md. 1953). Furthermore, and particularly relevant to this case, a majority shareholder may be liable to the minority when its conduct "substantially defeat[s] the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise." *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365, 377-78 (Md. App. 2005).

In *Twenty Seven Trust v. Realty Growth Investors*, minority shareholders brought a claim against the majority alleging that the majority had entered into a merger for the sole purpose of depriving the minority of any share in the company's federal tax loss carry forward, which was one of the benefits the plaintiff had sought when investing in the trust. 533 F. Supp. 1028 (D. Md. 1982). The court found that the plaintiff had alleged sufficient facts to state a claim. *Id*. The court noted that the majority had put forth different explanations for the reason for entering into the merger, but that it could not consider those explanations on a motion to dismiss. *Id*.

The same is true in this case. The Court finds that Plaintiffs have alleged sufficient facts to state a claim for breach of fiduciary duty against Archstone REIT in its capacity as majority shareholder. Plaintiffs allege that they invested in the A-1 units of the Archstone UPREIT to defer recognition of taxable gain until 2022, to maintain

liquidity, and to secure the monetary distributions required by the DOT.  (SAC ¶ 8.) Plaintiffs allege that, after the Merger, the A-1 shares ceased to exist and the options offered to Plaintiffs during the Merger—the cash-payout or the Series O shares—lacked the qualities that they sought when they invested in the A-1 shares.  (SAC ¶ 122.) Specifically, Plaintiffs allege that the post-Merger amended declaration of trust "eliminated the liquidity, and the distributions to which A-1 Unitholders were entitled", and that the Series O Units "not only had inferior economic characteristics, but also had debt characteristics that the Defendants warned people accepting those units could lead the IRS to consider them taxable, thus accelerating capital gains taxes without proceeds from which to pay them, and without any assurance that any Defendant would pay tax protections if such a liability were incurred."  (*Id*.)

Even if Plaintiffs may not ultimately be able to prove these allegations, the Court must accept them as true for purposes of the instant Motion.  *See Ridge at Red Hawk*, 493 F.3d at 1177.  Given this legal standard, the Court finds that Plaintiffs have alleged sufficient facts showing that Archstone REIT's decision to enter into the Merger substantially defeated the Plaintiffs' expectations when they invested their capital in the Archstone UPREIT.  As such, Plaintiffs have stated a claim for breach of fiduciary duty arising from Archstone REIT's role as majority shareholder.  Defendants' Motion to Dismiss is denied as to Claim Three.

Additionally, Defendants' only argument with regard to Claim Four, brought against Tishman-Speyer for aiding and abetting the breach of fiduciary duty, is that it fails because Claim Three fails.  (ECF No. 288 at 19.)  Because the Court has concluded that Plaintiff has stated a claim sufficient for Claim Three to survive the

Motion to Dismiss, Claim Four survives as well. Accordingly, Defendants' Motion to Dismiss is denied as to Claim Four.

**C.     Contract Claims (Claims 5, 6, and 7)**

In Claim Five, Plaintiffs allege that the Archstone UPREIT, Archstone REIT, and their successors-in-interest violated various provisions of the DOT by entering into the Merger without allowing Plaintiffs a vote and without considering Plaintiffs' interests. (SAC ¶¶ 195-208.)

Defendants move to dismiss this claim, arguing that Judge Nottingham rejected this claim in *Stender I*. (ECF No. 288 at 24 (citing ECF No. 76 at 39).) The Court has already noted that the law of the case doctrine is not applicable here, as *Stender I* was not a final order and the case has since been reassigned to a different district judge. Additionally, the complaint being evaluated in *Stender I* was fundamentally different than the Second Amended Complaint at issue here. In the SAC, Plaintiffs allege that a number of contractual provisions were breached, some of which were not addressed in *Stender I*. (*See* SAC ¶¶ 111-123.) As such, the Court finds that law of the case does not mandate that Claim Five, as currently pled in the SAC, be dismissed.

Defendants raise no other argument in favor of dismissal of Claim Five.[4] As such, the Court denies Defendants' Motion to Dismiss as to this claim.

Moreover, the only basis on which Defendants seek to dismiss Claims Six

---

[4] In a footnote in their reply brief, Defendants suggest that the breach of contract claim should be dismissed because Plaintiffs have failed to allege that they suffered any harm. (ECF No. 305 at 9 n.7.) The Court declines to address such a cursory argument raised in this manner. *See SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (holding that issues raised for the first time in a reply brief are waived).

(Tortious Interference with Contract) and Seven (Civil Conspiracy) is that they are dependent on Claim Five. (ECF No. 288 at 25.) Because the Court has denied the Motion to Dismiss as to Claim Five, Defendants have presented no basis for dismissing Claims Six and Seven, and Defendants' Motion to Dismiss is denied as to these claims.

**D.      Unjust Enrichment (Claim 8)**

In Claim Eight, Plaintiffs allege that Defendants Tishman-Speyer and their successors-in-interest (collectively "Tishman") were unjustly enriched by the Merger. (SAC ¶¶ 222-29.) Plaintiffs claim that Tishman was "unjustly enriched by the significant discount on the purchase price and from the refusal to allow Archstone to pay the third quarter dividend, and then structure the deal so as to avoid the liability the discount represented." (*Id*. ¶ 134.) Defendants raise three argument in support of dismissal of this claim.

1.      <u>Statute of Limitations</u>

Defendants move to dismiss this claim and argue that it is barred by the statute of limitations. (ECF No. 288 at 26.) Defendants contend that Plaintiffs' unjust enrichment claim is untimely because it first appears in the SAC, which was filed more than seven years after the Merger. (*Id*. at 27.) Plaintiffs respond that their unjust enrichment claim relates back to the claims originally pled, such that it is not untimely. (ECF No. 299 at 26-27.)

Federal Rule of Civil Procedure 15(c)(1) governs the relation back of amendments and states that, if the applicable statute of limitations has run, an amended complaint may relate back to the date of the timely filed original complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out—or attempted to be set out—in the original pleading." As the Supreme Court noted in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Id*.

The premise underlying Rule 15(c) is "that once notified of pending litigation over particular conduct or a certain transaction or occurrence, the defendant has been given all the notice required for purposes of the statute of limitations." *Marsh v. Coleman Co., Inc.*, 774 F. Supp. 608, 612 (D. Kan. 1991) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)). As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts. *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1385-86 (5th Cir. 1994).

The Court finds that Plaintiffs' unjust enrichment claim relates back to the filing of the original Complaint because it arises from the same transaction—the Merger—as all of the claims originally pled. (*See* ECF No. 1.) The original Complaint was filed within the limitations period, and put Defendants on notice that Plaintiffs were challenging the circumstances surrounding the Merger. Such generalized notice is all that is required by Rule 15.

2. <u>Failure to State a Claim</u>

Defendants next argue that Plaintiffs have failed to state a claim for unjust enrichment. (ECF No. 288 at 27-28.) Defendants contend that, per the DOT, Plaintiffs

were not entitled to a higher payout than any other shareholder, and therefore they cannot allege that they were unfairly denied a higher payment. (*Id.*) While Defendants accurately cite portions of the DOT, this argument misconstrues or improperly limits Plaintiffs' claim. Plaintiffs appear to allege that the payout stock price should have been higher for all shareholders, because Tishman should not have been able to negotiate a discounted price if it was not going to assume the tax deferral liabilities. (SAC ¶¶ 227-29.)

Additionally, at least one aspect of Plaintiffs' unjust enrichment claim does not relate to the price per share negotiated as part of the Merger. Plaintiffs also contend that Tishman was unjustly enriched when it wrongfully withheld a third-quarter dividend that all A-1 shareholders were entitled to receive. (SAC ¶ 224.) Defendants make no argument challenging Plaintiffs' factual contention about Tishman wrongfully retaining the third-quarter pay out.

Based on the allegations in the SAC, the Court finds that Plaintiffs have put forth sufficient facts to state a claim for unjust enrichment.

3. <u>Adequate Remedy at Law</u>

Finally, Defendants argue that the Court should dismiss the unjust enrichment claim because Plaintiffs had the opportunity to adjudicate all claims related to the tax protection obligations of the DOT through arbitration. (ECF No. 288 at 28.) Defendants point out that Plaintiffs lost that arbitration, and contend that Plaintiffs should not be permitted to use this litigation to get a second chance on this issue. (*Id.*)

In response, Plaintiffs point out that the only Defendant who was a party to the DOT—and therefore required to participate in the arbitration—was Archstone, and that

Plaintiffs' unjust enrichment claim is brought against Tishman. (ECF No. 299 at 28.) The Court agrees with Plaintiffs that, because they could not have pursued their claims against Tishman in arbitration, Defendants have not shown that the unjust enrichment claim should be dismissed on this basis.

Accordingly, Defendants' Motion to Dismiss is denied as to Plaintiffs' unjust enrichment claim (Claim Eight).

**E.   Claims 10, 11, and 12**

Defendants move to dismiss Claims Ten, Eleven, and Twelve. (ECF No. 288.) However, after the Motion was filed, Plaintiffs voluntarily dismissed these claims. (ECF Nos. 300, 304.) As such, Defendants' Motion is moot as to these claims.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 288) is GRANTED IN PART and DENIED IN PART;

2. The Motion to Dismiss is GRANTED as to Claims One and Two, and such claims are DISMISSED WITHOUT PREJUDICE based on lack of standing;

3. The Motion to Dismiss is DENIED AS MOOT with respect to Claims Ten, Eleven, and Twelve based on Plaintiffs' voluntary dismissal of such claims;

4. The Motion to Dismiss is DENIED as to Claims Three, Four, Five, Six, Seven and Eight, and such claims remain pending in this action; and

5. Within two business days of this Order, the parties shall contact Magistrate Judge Michael J. Watanabe's Chambers to discuss the next procedural step in

this case, including whether a lift of the stay is appropriate.

Dated this 14th day of October, 2014.

BY THE COURT:

_____
William J. Martinez
United States District Judge