**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 07-cv-02503-WJM-MJW

STEVEN A. STENDER, and
INFINITY CLARK STREET OPERATING, L.L.C.,
on behalf of themselves and all others similarly situated,

      Plaintiffs,
v.

ARCHSTONE-SMITH OPERATING TRUST *et al.*,

      Defendants.

## ORDER DENYING MOTION TO RECONSIDER

Before the Court is Defendants' Motion to Reconsider (ECF No. 440) this Court's September 28, 2015 order granting in part and denying in part Plaintiffs' motion for class certification ("Certification Order") (ECF No. 434). For the reasons stated below, the Motion to Reconsider is denied.

### I. LEGAL STANDARD

"A motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But such motions "are regarded with disfavor. . . [and are] 'not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'" *Kerber v. Qwest Group Life Ins. Plan*, 727 F. Supp. 2d 1076, 1076 (D. Colo. 2010) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

## II.  ANALYSIS

Familiarity with the factual allegations, procedural history, and the Certification Order is presumed.

Defendants argue that this Court overlooked an important argument allegedly demonstrating that class certification even as to liability is inappropriate.  Specifically, Defendants re-urge their argument that: (a) a breach of fiduciary duty claim based on majority oppression of minority shareholders requires Plaintiffs to prove that the majority substantially defeated the minority's "reasonable expectations" (*see* ECF No. 312 at 13 (quoting *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365, 377–78 (Md. Ct. Spec. App. 2005))); and therefore (b) the liability phase will require discovery into every A-1 Unitholder's subjective expectations.  (ECF No. 440 at 6–7.)[1]  Similarly, Defendants assert that Plaintiffs' breach of contract claim turns on each A-1 Unitholder establishing that he/she/it suffered "adverse consequences" based on the Unitholder's individual, subjective expectations, preferences, and so forth.  (Id. at 7–8.)

To begin, the Court did not overlook these arguments.  They were subsumed in the observation that some Class members may have no interest in bringing a lawsuit like this one, but that does not mean that no one can bring a class action based on the theories Plaintiffs allege.  (ECF No. 434 at 14.)

Moreover, as to breach of fiduciary duty, Defendants are walking into a mess largely of their own making.  Last year, Defendants moved to dismiss Plaintiffs' Second Amended Complaint, including the fiduciary duty cause of action based on majority

---

[1] All ECF page citations refer to the page number in the ECF header, which does not always match the document's internal pagination.

oppression. (ECF No. 288 at 19–24.) Plaintiffs responded by offering the *Edenbaum* decision, *supra*, with its "reasonable expectations" requirement. (ECF No. 299 at 15.) The only mention of *Edenbaum* in Defendants' reply is a footnote distinguishing it as "distinct from the type [of corporate transaction] at hand" because it "arose in the context of a closely-held entity." (ECF No. 305 at 7 & n.5.) Indeed it did, and most of the discussion in *Edenbaum* (as well as in the cases on which *Edenbaum* relies) focuses on the policies motivating states to provide minority shareholders in closely-held entities with forms of relief not normally available in larger entities. *See* 885 A.2d at 377–80. But nowhere in Defendants' motion or reply did they argue that an oppression claim under Maryland law cannot extend to larger entities. (*See* ECF No. 288 at 19–24; ECF No. 305 at 6–9.)

Defendants likewise failed to offer such an argument in their pre-arbitration motion to dismiss. (See ECF No. 29 at 17–19.) Plaintiffs' response to that motion cited cases similar to *Edenbaum* (ECF No. 40 at 30–31), one of which Defendants' reply distinguished—again, in a footnote—by quoting language from the case showing that it arose in the closely-held context (ECF No. 51 at 18 n.10). But Defendants surprisingly did *not* then go on to point out that Archstone was *not* a closely held entity. Rather, Defendants took a very different approach, claiming that Plaintiffs' case "[did] not remotely suggest that it is majority oppression to approve a transaction in compliance with a provision in the Declaration of Trust authorizing the majority unitholder to approve a merger for specified consideration." (*Id.*)

The question of whether an oppression claim can apply to a non-closely held

entity is not something to be addressed only by way of oblique distinction in a reply brief footnote. Indeed, it would seem to be an obvious and primary argument. But in eight years of litigation, Defendants have never put forth that argument and have certainly forfeited it by this point. Given the absence of such an argument, and the absence of any argument contesting the "reasonable expectations" requirement stated in *Edenbaum* and proffered by Plaintiffs, this Court adopted that requirement when resolving Defendants' motion to dismiss the Second Amended Complaint. (ECF No. 312 at 13.)

*Edenbaum* can indeed be read as requiring individualized inquiry into each minority shareholder's expectations, but *Edenbaum* also suggests that a shareholder agreement is evidence of the minority shareholder's expectations. *See Edenbaum*, 885 A.2d at 379 (discussing minority shareholder's trial testimony regarding her "expectation that she would be employed by the corporation, share in corporate earnings, and have a place in corporate management," but noting that "her expectations were memorialized in the . . . shareholders' agreement"). More importantly, however, the New York case from which *Edenbaum* largely derived the contours of "reasonable expectations," *see id.* at 378–79, looks to what *the majority* knew or should have known regarding the minority's expectations. *See Matter of Kemp & Beatley, Inc.*, 473 N.E.2d 1173, 1179 (N.Y. 1984). A North Dakota case cited approvingly by *Edenbaum*, *see* 885 A.2d at 378, adopts the New York approach. *Balvik v. Sylvester*, 411 N.W.2d 383, 387 (N.D. 1987). And a North Carolina case, also cited approvingly in *Edenbaum*, *see* 885 A.2d at 378, reaches the same conclusion through its own reasoning. *See Meiselman v.*

*Meiselman*, 307 S.E.2d 551, 563 (N.C. 1983) ("In order for plaintiff's expectations to be reasonable, they must be known to or assumed by the other shareholders and concurred in by them. . . . Only expectations embodied in understandings, express or implied, among the participants should be recognized by the court.").

In this case, given the size of the minority (800+ Unitholders, *see* ECF No. 434 at 9), the majority's understanding of the minority's expectations would naturally flow mostly, perhaps entirely, from the Declaration of Trust and its connected agreements. Thus, class certification remains appropriate with respect to liability on Plaintiffs' fiduciary duty claim.

Turning to the breach of contract claim, Defendants argue that Plaintiffs' claim turns on, among other things, proving that they were "adversely affected" by Defendants' actions.  (ECF No. 440 at 7–8; *see also* ECF No. 413 at 51–52.) Defendants do not specify precisely where they derive the "adversely affected" requirement or how it relates to the elements of a breach of contract claim.  Plaintiffs suggest that Defendants may be referring to the Declaration of Trust, Annex A, § 12.4. (ECF No. 447 at 7–8.)  That section states, in pertinent part:

> Notwithstanding anything in this Article 12 to the contrary, this Agreement shall not be amended with respect to any Unitholder adversely affected thereby without the approval of such Unitholder, if such amendment would [trigger certain specified consequences].  This Section 12.4 does not require unanimous approval of all Unitholders adversely affected unless the amendment is to be effective against all Unitholders adversely affected.

(ECF No. 397-32 at 73.)

To the extent this language makes "adversely affected" an element of Plaintiffs'

breach of contract claim (and the Court does not so hold), it would appear to duplicate the damages element. Or in any event, Defendants are tellingly silent on how "adversely affected" would fit anywhere other than the damages element. The Court *denied* class certification on the question of damages. (ECF No. 434 at 25.) Class certification on the liability elements of breach of contract therefore remains appropriate.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Reconsider (ECF No. 440) is DENIED.

Dated this 30th day of October, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge