**No. 15-**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

Steven A. Stender, Infinity Clark Street Operating, L.L.C., on behalf of themselves and all others similarly situated,

*Plaintiffs-Respondents*,

Harold Silver,

*Plaintiff,*

*v.*

Archstone-Smith Trust, Archstone-Smith Operating Trust, Archstone Smith Multifamily Series I Trust, R. Scot Sellers, Charles Mueller, Jr., Caroline Brower, Mark Schumacher, Alfred G. Neely, Ernest A. Gerardi, Jr., Ruth Ann M. Gillis, Ned S. Holmes, Robert P. Kogod, James H. Polk, III, John C. Schweitzer, Robert H. Smith, Stephen Demeritt.

*Defendants-Petitioners.*

On Appeal from the United States District Court
for the District of Colorado (Martinez, J.)
No. 07-cv-2503-WJM-MJW

## PETITION FOR PERMISSION TO APPEAL CLASS CERTIFICATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Jonathan D. Polkes
Gregory Silbert
Ashish D. Gandhi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
(212) 310-8000
jonathan.polkes@weil.com
gregory.silbert@weil.com
ashish.gandhi@weil.com

Frederick J. Baumann
Alex C. Myers
LEWIS ROCA ROTHGERBER LLP
One Tabor Center, Suite 3000
1200 17th Street
Denver, Colorado 80202-5855
(303) 623-9000
fbaumann@lrrlaw.com
amyers@lrrlaw.com

*Attorneys for Defendants-Petitioners*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Petitioners Archstone-Smith Trust,

Archstone-Smith Operating Trust and Archstone Multifamily Series I Trust state as

follows:

Petitioner Archstone-Smith Trust has been merged out of existence, but it

formerly was the parent entity of Petitioner Archstone-Smith Operating Trust (now

known as "Archstone"). The successor by merger to Archstone-Smith Trust is

Petitioner Archstone Multifamily Series I Trust (formerly known as Tishman

Speyer Archstone-Smith Multifamily Series I Trust). Following the 2007 merger

described herein, Archstone Multifamily Guarantor, L.P. indirectly owns nearly

100-percent of all parent entities of Archstone. No publicly held entity directly

owns ten percent (10%) or more of the stock of the foregoing entities. Archstone

Multifamily Guarantor, L.P. is controlled by Archstone Multifamily (Governance)

L.L.C.

Appellate Case: 15-707   Document: 01019523557   Date Filed: 11/13/2015   Page: 3

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...............................................................................1

QUESTIONS PRESENTED ................................................................4

STATEMENT OF JURISDICTION ....................................................5

STATEMENT OF THE CASE .............................................................5

     A.    Plaintiffs' Investment and the 2007 Transaction .................5

     B.    Proceedings Below ...............................................................8

ARGUMENT.....................................................................................10

I.    THE DISTRICT COURT'S CERTIFICATION OF A LIABILITY
    CLASS WAS MANIFESTLY ERRONEOUS..........................11

     A.    "Reasonable Expectations" and "Adverse Effects" Are
        Inherently Individualized Standards that Do Not Meet The
        Predominance Requirement Of Rule 23(b)(3)....................11

     B.    No Class Can Be Certified When Defendants' Conduct Benefits
        Some Class Members and Allegedly Harms Others ..........15

     C.    A Class Action Is Not A Superior Method Of Adjudication.............18

II.    REVIEW OF THE CLASS CERTIFICATION ORDER IS NEEDED
    NOW, NOT YEARS LATER AFTER A FINAL JUDGMENT.................19

CONCLUSION ................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Healthcare Grp., L.P.,*
    247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)........................................................................................19

*Bieneman v. City of Chicago,*
    864 F. 2d 463 (7th Cir. 1988)....................................................................15, 16

*Comcast Corp. v. Behrend,*
    --- U.S. ----, 133 S.Ct. 1426. 1433 (2013) ..................................................8, 11

*Edenbaum v. Schwarcz-Osztreicherne,*
    885 A.2d 365 (Md. Ct. Spec. App. 2005)...................................................12, 14

*Gelder v. Coxcom Inc.,*
    696 F.3d 966 (10th Cir. 2012)..........................................................................5

*Lozano v. AT&T Wireless Servs., Inc.,*
    504 F.3d 718 (9th Cir. 2007)...........................................................................12

*Mayfield v. Dalton,*
    109 F.3d 1423 (9th Cir. 1997).........................................................................15

*Meiselman v. Meiselman,*
    307 S.E.2d 551 (N.C. 1983) ............................................................................13

*Mikulski v. Centerior Energy Corp.,*
    501 F.3d 555 (6th Cir. 2007)...........................................................................17

*Myers v. Hertz Corp.,*
    624 F.3d 537 (2d Cir. 2010) ............................................................................11

*Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
    259 F.3d 154 (3d Cir. 2001).............................................................................18

*Onyx Props. LLC v. Bd. of Cnty. Comm'rs*,
  295 F.R.D. 506 (D. Colo. 2013) ........................................................................18

*Pickett v. Iowa Beef Processors*,
  209 F.3d 1276 (11th Cir. 2000) .........................................................................15

*Stratton v. Amer. Medical Sec., Inc.*,
  266 F.R.D. 340 (D. Ariz. 2009) ................................................................. 12, 13

*Vallario v. Vandahey*,
  554 F.3d 1259 (10th Cir. 2009) ................................................................. 10, 19

*Wal-Mart Stores, Inc. v. Dukes*,
  --- U.S. ----, 131 S.Ct. 2541 (2011) ........................................................ 3, 11, 14

*Wallace B. Roderick Revocable Living v. XTO Energy*,
  725 F.3d 1213,1220 (10th Cir. 2013) ..............................................................11

## Statutes

28 U.S.C. § 1292(e) .................................................................................................5

28 U.S.C. § 1332(d) ................................................................................................5

## Other Authorities

Federal Rule of Civil Procedure 23 ................................................................*passim*

Pursuant to Federal Rule of Civil Procedure 23(f), Defendants-Petitioners respectfully request permission to appeal from an order of the United States District Court for the District of Colorado (Martinez, J.) certifying a liability class under Rule 23(b)(3) (the "Class Certification Order," attached hereto as Ex. A) and an order denying reconsideration of the same (attached hereto as Ex. B).[1]

## **INTRODUCTION**

The liability-only class certified in this case is unlike any class previously certified by any court.  To the best of Defendants' knowledge, the majority oppression claim Plaintiffs have asserted has never before been applied in a class action.  Indeed, as the district court acknowledged, the standard the court deemed applicable—that a minority shareholder's reasonable expectations were central to his investment decision and were later defeated—has never previously been applied outside of a *closely held corporation*.  On the merits, this claim is highly tenuous:  it was previously rejected by two district court judges in this case, but revived when the case was reassigned to a third judge, who held that he was "not bound by the [earlier] findings or conclusions."[2]  The district court then held *for*

---

[1] Defendants-Petitioners are Archstone-Smith Trust, Archstone-Smith Operating Trust, Archstone Smith Multifamily Series I Trust, R. Scot Sellers, Charles Mueller, Jr., Caroline Brower, Mark Schumacher, Alfred G. Neely, Ernest A. Gerardi, Jr., Ruth Ann M. Gillis, Ned S. Holmes, Robert P. Kogod, James H. Polk, III, John C. Schweitzer, Robert H. Smith, and Stephen R. Demeritt.

[2] Tr. Ct. Docket No. ("ECF") 312 at 12.  Chief Judge Nottingham dismissed the majority oppression claim on the merits.  ECF 76 at 40-43.  Judge Blackburn, to whom the case

*the first time* that this claim can be asserted against a publicly traded entity, and, apparently also *for the first time*, that it can be asserted on behalf of a plaintiff class. The district court certified a liability class even though determining each class member's "reasonable expectations" would, by definition, require an individualized inquiry.

This case is equally extraordinary in another respect. There was nothing intrinsically harmful about the transaction that Plaintiffs challenge. Plaintiffs were given the choice to swap securities for cash at a *nearly 23% premium*, or else receive new securities that allowed them to defer tax payments and also had a 23% premium in stated par value. The harm Plaintiffs have alleged—and the theory on which they sought class certification—is an *after-tax* liability. Any after-tax harm, however, could be shown only by particularized proof of each class member's unique tax circumstances. The district court recognized this fact, but not its full implications. The court correctly denied class certification as to damages, but nonetheless incorrectly certified a liability class.

The order certifying a liability class was manifest error for at least three reasons. *First*, Plaintiffs need individualized proof to establish their claims, and

---

was transferred, agreed there were "pleading defects" but permitted Plaintiffs to amend the complaint. ECF 89 at 8-9. The case was then transferred again, this time to Judge Martinez, who allowed the claim to proceed—not because amendments to the complaint cured the original defects but rather because the court found that, "[g]iven the procedural history of this action, . . . the law of the case doctrine does not apply." ECF 312 at 12.

Defendants have a right to present individualized proof to defend against those claims. The question whether a particular, reasonable expectation was central to a particular investor's decision-making is not susceptible to classwide adjudication. Nor could Plaintiffs prove on a classwide basis that each class member's expectations were substantially defeated—especially since some class members received a net economic benefit. Plaintiffs' breach of contract claim similarly requires proof that an investor was adversely affected, and Plaintiffs could not make this showing on a classwide basis either. By excluding individualized proof, the Class Certification Order alters the parties' substantive rights and precludes potentially meritorious defenses to liability, which is prohibited by the Rules Enabling Act and Supreme Court precedent. *See Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ----, 131 S.Ct. 2541, 2561 (2011).

*Second*, as several circuit courts have already held, a class cannot contain members who benefited from the conduct that is alleged to be unlawful. The class certified by the district court violates this rule. The individualized issues in this case do not go merely to the *amount* of damages—as in a stock drop case, where a defendant's misconduct caused each plaintiff shareholder to suffer a loss, in differing amounts. Rather, here, there are class members who received a net economic benefit from the transaction. Indeed, a former named Plaintiff testified that this investment was among the best he ever made.

*Third*, a class action is not a superior method of adjudication when a separate, individualized trial would be needed for each and every class member who sought a recovery. A classwide finding of "liability" in this case would not even establish that any class member suffered an injury, as opposed to receiving a benefit. Only individualized trials for each class member could sort out winners from losers.

The time to correct these errors is now, not after a final judgment. There are 813 members of the liability class certified by the district court. If Defendants were found "liable" to the entire class, there could be as many as 813 individualized trials before a final judgment could be entered. In the intervening years, the immense costs and burdens of this sprawling litigation would continue to multiply. Plaintiffs have already taken over 25 depositions in this case and related arbitrations. Now that the liability class has been certified, they are seeking to take 50 more. This scorched-Earth litigation will continue for as long as this case bears the mantle of a class action. And it will all be for naught.

The Court should grant the Petition for review and reverse the Class Certification Order.

## QUESTIONS PRESENTED

1. Did the district court err by certifying a liability class, where Plaintiffs are required to prove that each class member's reasonable expectations were

central to his or her investment decision and were substantially defeated, and that each class member was adversely affected?

    2.    Did the district court err by certifying a liability class, where some class members derived net economic benefits from the conduct that the class representatives allege to be unlawful?

    3.    Did the district court err by certifying a liability class where hundreds of individualized trials would be needed to determine whether each class member even suffered an injury?

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1332(d).  This Court has jurisdiction under 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f).  This Petition is timely because the Class Certification Order was entered on September 28, 2015; the Defendants' Motion To Amend And Reconsider the Court's Class Certification Order ("Motion to Reconsider") [ECF 440] was timely filed on October 6, 2015; and the District Court's Order Denying Defendants' Motion to Reconsider ("Reconsideration Order") was entered on October 30, 2015.  ECF 449.  *See Gelder v. Coxcom Inc.*, 696 F.3d 966, 969 (10th Cir. 2012).

## STATEMENT OF THE CASE

### A.    Plaintiffs' Investment and the 2007 Transaction

Plaintiffs are sophisticated real estate investors and members of limited

partnerships that contributed real estate to a partnership managed by Defendant

Archstone-Smith Trust ("Archstone"), a publicly-traded real estate investment

trust.  Archstone is governed by a Declaration of Trust ("DOT"), akin to the

corporate charter of a company.  In exchange for contributing property to

Archstone, Plaintiffs received securities known as "A-1 Units."  Plaintiffs entered

into separate contracts governing these various contributions, which took place at

different times over the last several decades.  These contracts were individually

negotiated, at different points in time, with the aid of different investment advisors.

 The contributing partnerships often negotiated contractual restrictions on

sales of the contributed property, for bargained-for "lockout periods."  Contained

in separate tax protection agreements ("TPA"), the lockout periods protected

plaintiffs from tax consequences in the event of certain sales of the contributed

property following contribution.  Archstone, through an operating entity, acquired

over 100 different properties in unit deals over the course of several decades, many

of which are subject to their own individualized TPAs and unique lockout periods.

 On May 29, 2007, Archstone announced that affiliates of Lehman Brothers

Holdings Inc. and Tishman Speyer had agreed to take Archstone private for $60.75

per share ("2007 Transaction").  With the sale price representing a 22.7% premium

over the pre-acquisition price of Archstone common stock, the transaction was met

with overwhelming approval by Archstone's public shareholders.  The deal

successfully closed on October 5, 2007.

Plaintiffs are former owners of Archstone A-1 Units, which, before the acquisition, were exchangeable on a 1:1 basis for shares of Archstone common stock. Plaintiffs were given two options in the 2007 Transaction. Like common stock holders, they could exchange their units for $60.75 per share, which would earn them a nearly 23% premium over the Archstone's pre-acquisition trading value, but would trigger tax consequences. Alternatively, they could defer realization of any taxable gain on their contributed property by taking newly-issued Series O preferred units in the post-merger entity, with the same nearly 23% premium stated value of $60.75 (or taking a mix of cash and Series O Units). Plaintiffs seek to represent a class comprised of both cash-takers and Series O takers. Although Plaintiffs allege the 2007 Transaction was unlawful, it was unambiguously authorized by the DOT, which expressly states that Archstone may enter into a merger, without taking into account A-1 Unitholders' individual tax consequences, as long as A-1 Unitholders are offered the same consideration as common stock holders.

The 2007 Transaction did not intrinsically harm A-1 Unit holders. Indeed, many class members likely received substantial economic benefits. For example, class members who exchanged units for cash and did not suffer tax liability were paid a very high premium. Even class members who did suffer tax liability may

have benefited from the 23% premium if, for example, they had already planned to sell A-1 Units and thus would have incurred tax obligations regardless of the 2007 Transaction.  Similarly, class members who took Series O units continued to defer tax payments, received securities with a higher stated value than A-1 Units, and have also seen the value of their investment substantially appreciate since 2007.

### B.   Proceedings Below

Approximately a month after the closing of the 2007 Transaction, Plaintiffs brought this action, asserting various contractual and fiduciary duty claims.  Their complaint has since been dismissed and amended multiple times.[3]  Judge Nottingham ordered Plaintiffs to arbitrate their breach of contract claims, and the arbitrator ruled against them, holding, among other things, that they are not entitled to tax indemnification from Archstone.  Throughout all these proceedings, the crux of Plaintiffs' claims has been that they supposedly suffered adverse tax consequences from the 2007 Transaction.

When Plaintiffs moved for class certification, they were required to "establish that damages are susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, --- U.S. ----, 133 S.Ct. 1426. 1433 (2013).  Plaintiffs' expert, Evan Cohen, sought to show classwide damages by comparing "the *after-tax value* of the A-1 units, Series O units, and cash."  Ex. A at 21 (emphasis

---

[3] *See, e.g.*, ECF 76, 101, 103, 114, 301, 304, 312.

8

added).  Cohen's attempt failed because his analysis was riddled with assumptions that the district court variously described as "troubling," "beyond belief," and, ultimately, instilling "no confidence that his final figures are anywhere close to the harm the Class allegedly suffered."  *Id.* at 24.  Among other things, Cohen assumed—with no supporting evidence—that all class members were subject to the same federal marginal tax rate; all paid the same "weighted average state tax rate;" none ever took tax deductions or offsets; all A-1 Units had the same "average basis" price; and all Series O holders would sell those units within three years.  *Id.* at 21-22.  Because all these factors (and more) would need to established by individualized proof—not merely assumed to be common among all class members—the court correctly denied class certification as to damages.  *Id.* at 25.

But the district court followed this ruling with a non-sequitur:  It stated that it may "[n]onetheless . . . still certify as to the question of liability only."  *Id.*  The district court did not specifically address Defendants' arguments against classwide adjudication of liability, nor did it identify any common liability issues or analyze whether such issues predominate over individual ones.

Defendants moved for reconsideration, asking the district court to address their arguments that Plaintiffs' theories of liability require individualized proof, and that some class members were not harmed at all.  The court denied the motion. It stated that these arguments had not been overlooked but were rather "subsumed

in [the court's] observation that some Class members may have no interest in bringing a lawsuit like this one." Ex. B at 2. The court then recognized that the "reasonable expectations" standard has previously been applied only to closely held corporations, and acknowledged that "*Edenbaum*," the leading case, "*can indeed be read as requiring individualized inquiry* into each minority shareholder's expectations." *Id*. at 4 (emphasis added). The court ruled, however, that a shareholder agreement is also "evidence of the minority shareholder's expectations." *Id.* It further stated that, to the extent "adversely affected" is an element of liability (which the court assumed without deciding), it is duplicative of damages. *Id*. at 5-6.

## ARGUMENT

Rule 23(f) provides this Court with broad discretion to "permit an appeal from an order granting or denying class-action certification." Fed. R. Civ. P. 23(f). The Court may grant permission to appeal "on the basis of any consideration that [it] finds persuasive." *Vallario v. Vandahey*, 554 F.3d 1259, 1262 (10th Cir. 2009). "[W]here the deficiencies of a certification order are both significant and readily ascertainable, taking into account the district court's discretion in matters of class certification, interlocutory review is appropriate to save the parties from a long and costly trial that is potentially for naught." *Id*. at 1264.

## I.     THE DISTRICT COURT'S CERTIFICATION OF A LIABILITY CLASS WAS MANIFESTLY ERRONEOUS

When addressing class certification, the district court must undertake a "rigorous analysis" to satisfy itself that the prerequisites of Rule 23 are met.  *See Wal-Mart*, 131 S.Ct. at 2551; *Comcast*, 133 S.Ct. at 1432 (Courts have a "duty to take a close look at whether common questions predominate over individual ones") (citation omitted).  At this stage, a court must "probe behind the pleadings" to determine if Plaintiffs fulfilled the requirement to "affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact*…common questions of law or fact."  *Wal-Mart*, 131 S.Ct. at 2551.

The predominance criterion—which would be central to this appeal—is "far more demanding" than Rule 23(a)'s commonality requirement.  *Wallace B. Roderick Revocable Living v. XTO Energy*, 725 F.3d 1213,1220 (10th Cir. 2013).  The "predominance requirement requires a district court to consider 'all factual or legal issues.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 550 (2d Cir. 2010).

### A.     <u>"Reasonable Expectations" and "Adverse Effects" Are Inherently Individualized Standards that Do Not Meet The Predominance Requirement Of Rule 23(b)(3)</u>

The district court correctly determined that it could not certify a damages class in this case because the presence (or absence) of damages would depend on each plaintiff's individualized tax circumstances.  Ex. A at 25.  But the court committed manifest error when it nonetheless certified a class as to liability.

11

To establish majority shareholder oppression, the district court previously held, Plaintiffs must prove that Defendants' "conduct substantially defeat[ed] the reasonable expectations held by minority shareholders in committing their capital to the particular enterprise." *See* ECF 312 at 13 (citations and quotation marks omitted). The investor's expectations must not only be objectively reasonable but also "***central to the [investor's] decision*** to join the venture." *Edenbaum v. Schwarcz-Osztreicherne*, 885 A.2d 365, 379 (Md. Ct. Spec. App. 2005) (emphasis added). As the district court acknowledged, until this case, the reasonable expectations standard had been applied solely to closely held corporations, not to publicly traded entities like Archstone. Ex. B at 3. *Edenbaum*, for example, involved a corporation with only two shareholders.

This case also appears to be the only one to apply this reasonable expectations standard in a class action. Courts that have addressed a similar standard—for breach of contract, not majority shareholder oppression—have held that "individual issues predominated" because the court "would have to ascertain each individual's expectations about the contract, and determine whether those expectations were reasonable." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007); *see also Stratton v. Amer. Medical Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009) ("[I]ndividual issues would outweigh any common ones" because the "claim requires consideration of the reasonable expectations of

12

each [class member] and the circumstances surrounding each contract").

To shoehorn this case into a class action, the district court compromised Defendants' substantive rights. Even after acknowledging that *Edenbaum* could be read to require an individualized inquiry, the court held that a liability class was still appropriate because "a shareholder agreement is evidence of the minority shareholder's expectations." Ex. B at 4. But even if a contract were such evidence, it is *not the only relevant and admissible evidence* of this essential element of Plaintiffs' claim. Indeed, as one case cited favorably by both the district court (Ex. B at 4-5) and *Edenbaum* explained, "the 'rights or interests' of a shareholder"— which "'include [his] "reasonable expectations"'— "***will not necessarily be the same*** 'rights or interests' of any other shareholder." *Meiselman v. Meiselman*, 307 S.E.2d 551, 563 (N.C. 1983) (emphasis added). Rather, "[a]n articulation of [a shareholder's] 'rights or interests' will necessarily require ***a case-by-case determination based on an examination of the entire history of the participants' relationship***—an examination not only of the expectations generated by the participants' original business bargain, but also of the history of the participants' relationship as expectations alter and new expectations develop…." *Id.* (emphasis added) (citation omitted); *see also Stratton*, 266 F.R.D. at 353 (holding that, notwithstanding a standard contract, individual issues as to reasonable expectations predominated over common issues).

A contract could be relevant to show that a particular expectation was, or was not, reasonable—indeed, the DOT expressly authorizes the 2007 Transaction, so any contrary expectation would *not* have been reasonable. But a contract, by itself, could not establish that a particular expectation was "*central to the [investor's] decision* to join the venture," *Edenbaum*, 885 A.2d at 379 (emphasis added), or that an expectation was later substantially defeated. Indeed, in this case, all but one of the claimants in a related arbitration (all of whom are class members here) testified that they *did not even read the DOT* before joining the venture, or else that they could not recall reading it.

If Plaintiffs' theory of liability, heretofore applied only to closely held corporations, is to be applied in this case, Defendants necessarily have the right to present individualized proof to rebut Plaintiffs' claims. Defendants cannot be stripped of that right by class certification. *See Wal-Mart*, 131 S.Ct. at 2561 ("Because the Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right, a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims.") (internal quotation marks and citations omitted). But that is the unavoidable consequence of the class certified by the district court.

To establish their breach of contract claim, Plaintiffs must similarly prove the 2007 Transaction was completed in a "manner that adversely affected" them.

*See* ECF 226 at ¶¶ 201, 204.  The district court brushed this concern aside, holding that adverse effect, to the extent it is an element of the claim, duplicates damages. Ex. B at 5-6.  But, as the district court already held, damages to class members would depend on each individual's tax circumstances and cannot be established by common proof.  So adverse effect cannot be shown by common proof either, and neither liability nor damages can be determined on a classwide basis.

### B.   No Class Can Be Certified When Defendants' Conduct Benefits Some Class Members and Allegedly Harms Others

A separate reason the liability class should not have been certified is that it includes class members who benefited from the allegedly wrongful conduct.  The individual issues in this case do not go merely to the *amount* of damages, as in a stock drop case.  Here, if an individual class member did not suffer tax liability, there was no harm at all—and thus no liability or damages.  Named plaintiff Stender has already lost on the issue of his tax liability in arbitration.[4]  Moreover, some class members, like former named plaintiff Harold Silver, derived significant economic benefits from the challenged transaction.

"[A] class cannot be certified when ... it consists of members who benefit from the same acts alleged to be harmful to other members of the class."  *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *see also Mayfield v.*

---

[4] Because Stender lost the arbitration involving the same facts, he is also neither a typical nor an adequate class representative.  *See* Fed. R. Civ. P. 23(a)(3),(4).

15

*Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997) (finding a conflict among class members where some "approved" of the challenged conduct); *Bieneman v. City of Chicago*, 864 F. 2d 463, 465 (7th Cir. 1988) (denying certification of a class of landowners near the airport claiming decreased property value, because some landowners benefited from the airport); *Allied Orthopedic Appliances Inc. v. Tyco Healthcare Grp., L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) ("[N]o circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").

The benefits to class members are readily apparent from the testimony of former named Plaintiff, Silver.  Far from being harmed, Silver was thrilled with his Archstone investment and with the 2007 Transaction.  He testified it was one of the best investments he ever made—"[o]utside of [marrying] [his] wife," that is.  ECF 413 at Ex. 1 (Silver Tr. 83:2-4).  And no wonder: in the 2007 Transaction, Silver exchanged his shares for Series O Units, which allowed him to continue deferring tax payments and which are worth far more than his invested capital.  ECF 413 at 24.  If Silver redeemed his Series O Units today, he would receive a nearly 400% return on his original investment. *Id.* at 2.  As investments go, Silver testified,

Archstone was a good one.[5]  *Id.*  The district court held that Silver could not serve as a class *representative* because he did not have sufficient knowledge of the claims.  Ex. A at 18.  But Silver cannot be a class *member* either, because a class cannot include members who benefited from the challenged conduct.

Only individualized proof could show whether a particular class member benefited from or was harmed by his or her Archstone investment and the 2007 Transaction.[6]  And, as the district court recognized, there would undoubtedly be differences among class members.  *See* Ex. A at 24 ("[I]t is beyond belief" that not one of the 800+ class members had tax deductions or offsets).[7]

---

[5] These facts came out only because Plaintiffs put Mr. Silver forward as a class representative.  If he had lurked in the background as an absent class member, there would have been no opportunity to examine him until *after* the court had ruled on liability.  There is no reason to think Mr. Silver is an outlier or idiosyncratic investor.  The Archstone investment and 2007 Transaction indisputably provided substantial returns to investors who would be part of the plaintiff class.  Indeed, any showing of harm would depend on idiosyncratic factors.  As named Plaintiff Mr. Stender acknowledged, a class member's age, by itself, can materially alter his investment goals.  ECF 413 at Ex. 5 (Stender Tr. 131:1–132:17).

[6] Relevant individualized factors might include, among others: the class member's effective marginal tax rates; the availability of tax deductions or offsets; the cost basis of each class member's A-1 Units; the remaining duration of the class member's specific TPA, which varies between individuals; and any other circumstance bearing on a class member's intent to hold or sell units, such as personal investment expectations, age, estate planning, and individual financial circumstances.

[7] *See also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 572 (6th Cir. 2007) ("Each of the individual shareholders presumably, at least theoretically, falls within a particular (differing) income tax bracket, holds a unique investment portfolio (with different gains, losses, deductions, offsets, write-offs, tax shields, etc., in any given year), and consequently, pays a different amount of taxes.").

To defeat class certification, Defendants need not prove that class members received economic benefits.  Just the opposite:  *Plaintiffs* must prove that each class member suffered an *economic harm*.  They cannot meet this burden because the investment and 2007 Transaction were not intrinsically harmful.  In a similar situation where "economic loss to the plaintiffs cannot be presumed," the Third Circuit denied class certification in *Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 259 F.3d 154, 180 (3d Cir. 2001).  As the court explained, "[t]he ability to calculate the aggregate amount of damages does not absolve plaintiffs from the duty to *prove each investor was harmed* by the defendants' practice." *Id.* at 188 (emphasis added).  And in *Newton*, just like this case, "[d]etermining which class members were economically harmed would require an individual analysis . . . . The individual questions, therefore, are overpowering." *Id.* at 189.

## C.  A Class Action Is Not A Superior Method Of Adjudication

The liability class certified by the district court also fails to satisfy Rule 23(b)(3)'s superiority requirement.[8]  Class adjudication is not superior when hundreds of individual trials would be needed to determine whether each class member even suffered an injury.  *See Newton*, 259 F.3d at 192 ("Because injury

---

[8] The district court's decision to certify a class solely as to liability makes it even more important that Plaintiffs demonstrate superiority.  *See, e.g., In re Tetracycline Cases*, 107 F.R.D. 719, 727 (W.D. Mo. 1985) (severing claim under Rule 23(c)(4) creates "a corresponding increase in the importance accorded [to] Rule 23(b)'s requirement of superiority, a requirement which is unaffected by Rule 23(c)(4)(A)").

determinations must be made on an individual basis in this case, adjudicating the claims as a class will not reduce litigation or save scarce resources.  Under these circumstances, plaintiffs fail to satisfy the superiority standard"); *see also Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 295 F.R.D. 506, 513-14 (D. Colo. 2013) (superiority lacking when individual issues included not only damages, but also effects of challenged conduct on each class member).[9]

## II.   REVIEW OF THE CLASS CERTIFICATION ORDER IS NEEDED NOW, NOT YEARS LATER AFTER A FINAL JUDGMENT

This is an extraordinary case that deserves this Court's immediate attention. It involves an unprecedented application of a highly tenuous theory of liability, asserted for the first time ever against a publicly traded entity, and brought for the first time as a class action.  The district court has already determined that damages (if any) could only be established by individualized proof.  The court also acknowledged that "some Class members may have no interest in bringing a lawsuit like this one."  Ex. B at 2.  And the court candidly admitted that the leading case "can indeed be read as requiring individualized inquiry" to determine liability. *Id.* at 4.  But the court still certified a liability class.

---

[9] Another reason class adjudication is not superior is that the class members, who are sophisticated real estate investors and mostly members of limited partnerships, could bring independent suits. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (a class action protects "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

That erroneous decision will impose enormous costs and burdens that could never be recovered if review is deferred until after a final judgment.  Here, there would not just be "a long and costly trial that is potentially for naught," *Vallario*, 554 F.3d at 1264, there could be up to 813 individual trials before a final judgment could be entered.  If this Court does not take up these issues in an interlocutory appeal, they will be unresolved for years.  In the meantime, as long as this case proceeds as a class action, Plaintiffs will continue to expend outsized resources to litigate it, multiplying defense costs accordingly.  And Plaintiffs will, of course, use the threat of classwide liability to try to pressure Defendants into a settlement.

The costs of class certification cannot be counted only in dollars or delay. To make the case susceptible to classwide adjudication, the district court impermissibly impaired Defendants' ability to defend the lawsuit and compromised Defendants' substantive rights.  Accordingly, a classwide liability trial would not only be futile and expensive but also fundamentally unfair.

## CONCLUSION

For the foregoing reasons, the Court should grant the Petition and reverse the Class Certification Order.

Dated:  November 13, 2015                 Respectfully submitted,


                                          /s/ *Gregory Silbert*
                                          Jonathan D. Polkes
                                          Gregory Silbert
                                          Ashish D. Gandhi
                                          WEIL, GOTSHAL & MANGES LLP
                                          767 Fifth Avenue
                                          New York, NY 10153
                                          (212) 310-8000
                                          jonathan.polkes@weil.com
                                          gregory.silbert@weil.com
                                          ashish.gandhi@weil.com

                                          -and-

                                          Frederick J. Baumann
                                          Alex C. Myers
                                          LEWIS ROCA ROTHGERBER LLP
                                          1200 17th Street, Suite 3000
                                          Denver, Colorado 80202-5855
                                          (303) 623-9000
                                          fbaumann@lrrlaw.com
                                          amyers@lrrlaw.com
                                          *Counsel for the Defendants-Petitioners*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that:

1. The Petition complies with the pages limitations of Fed. R. App. P. 5(C)

   because it contains 20 pages, excluding the parts of the brief exempted by

   Fed. R. App. P. 5(C) and 32(a)(7)(B)(iii).

2. This Petition complies with the typeface requirements of Fed. R. App. P.

   32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because

   it has been prepared in a proportionally spaced typeface using Microsoft

   Office Word 2010 in Times New Roman 14-point type.

Dated:  November 13, 2015

Ashish D. Gandhi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
ashish.gandhi@weil.com

## CERTIFICATION OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I certify the following:

1.     All required privacy redactions have been made to this document.

2.     The hard copies of any pleading required to be submitted to the

clerk's office are exact copies of the ECF filing with the exception of any required

privacy redactions.

3.     The ECF submission was scanned for viruses with the most recent

version of a commercial virus scanning program, System Center Endpoint

Protection, last updated on November 12, 2015, and, according to the program, is

free of viruses.

Dated:  November 13, 2015

Ashish D. Gandhi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
Ashish.gandhi@weil.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2015, a copy of the foregoing Petition was served by First Class United States Mail, Postage Prepaid, and by Email, upon the following:

Kenneth A. Wexler, Esq.
Kara A. Elgersma, Esq.
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
kaw@wexlerwallace.com
kae@wexlerwallace.com

*Attorneys for Plaintiffs-Respondents*

Diane Vaksdal Smith
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
Englewood, Colorado 80112
dsmith@burgsimpson.com

*Attorneys for Plaintiffs-Respondents*

Lee Squitieri, Esq.
SQUITIERI & FEARON, LLP
32 East 57th Street, 12th Floor
New York, New York 10022
lee@sfclasslaw.com

*Attorneys for Plaintiffs-Respondents*

Roger P. Thomasch
Leslie A. Eaton
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202
thomasch@ballardspahr.com
eaton@ballardspahr.com

*Attorneys for Defendants Tishman Speyer Development Corporation, River Holding, LP, River Acquisition (MD), LP, and River Trust Acquisition (MD), LLC*

Dated: November 13, 2015

Ashish D. Gandhi
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
Ashish.gandhi@weil.com