IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 07-cv-2503-WJM-MJW

STEVEN A. STENDER, and
INFINITY CLARK STREET OPERATING, L.L.C.,
on behalf of themselves and all others similarly situated,

    Plaintiffs,
v.

ARCHSTONE-SMITH OPERATING TRUST *et al.*,

    Defendants.

## ORDER AFFIRMING TAXATION OF COSTS

Plaintiffs Steven A. Stender and Infinity Clark Street Operating, L.L.C. (together, "Plaintiffs"), brought this lawsuit as a putative class action in November 2007. It finally reached a resolution in August 2017 when the Court granted summary judgment in favor of all Defendants on all claims. *See Stender v. Archstone-Smith Operating Tr.*, 2017 WL 3676473 (D. Colo. Aug. 25, 2017) (ECF No. 614), *appeal pending*, No. 17-1332 (10th Cir.). The Court awarded Defendants their costs. After a contested hearing before the Court's Chief Legal Officer, to whom taxation of costs has been delegated, the Clerk of Court taxed $418,023.21 in favor of the Archstone Defendants[1] (ECF No.

---

[1] The "Archstone Defendants" comprise Archstone Enterprise LP, Archstone, Inc., Archstone-Smith Operating Trust, Archstone-Smith Trust, Avalonbay Communities, Inc., Caroline Brower, Stephen R. Demeritt, ERP Operating Limited Partnership, Equity Residential, Ernest A. Gerardi, Jr., Ruth Ann M. Gillis, Ned S. Holmes, Robert P. Kogod, Lehman Brothers Holdings, Inc., Charles Mueller, Jr., Alfred G. Neely, James H. Polk, III, Mark Schumacher, John C. Schweitzer, R. Scot Sellers, and Robert H. Smith.

635) and $61,643.01 in favor of the Tishman Defendants[2] (ECF No. 633).

Currently before the Court is Plaintiffs' Motion for Review of Clerk's Taxation of Defendants' Costs. (ECF No. 636.) The Court will uphold the Clerk's various determinations in all respects. Without question, the amount of costs taxed is eye-popping, but it is also understandable given the ten-year history of the case, with all the complexity and multiplication of proceedings that a ten-year history naturally implies. Moreover, Plaintiffs do not object to any particular line item as unreasonable, but argue only that certain categories should be completely disallowed as a matter of law or under the circumstances of this case. For the reasons explained below, the Court is not persuaded and therefore affirms the Clerk's two awards.

## I. STANDARD OF REVIEW

"On motion served within the next 7 days [after the clerk taxes costs], the court may review the clerk's action." Fed. R. Civ. P. 54(d)(1). "The district court's review of a clerk's order is de novo." *Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 161 (10th Cir. 2011).

## II. ANALYSIS

**A.     Costs Awarded to Archstone Defendants**

    1.     <u>Costs Explicitly Available Under 28 U.S.C. § 1920</u>

        a.     *Deposition & Hearing Transcripts from the Arbitration*

As described in many previous filings, the parties arbitrated one of Plaintiffs' original causes of action. *See, e.g.*, *Stender v. Archstone-Smith Operating Tr.*, 2017

---

[2] The "Tishman Defendants" comprise Archstone Multifamily Series Trust, River Acquisition (MD), LP, River Holding, LP, River Trust Acquisition (MD), LLC, and Tishman Speyer Development Corporation.

WL 3676473, at *8–9 (D. Colo. Aug. 25, 2017) (ECF 614). The Clerk awarded $42,781.01 for arbitration hearing transcripts and $8,200.22 for arbitration deposition transcripts. (ECF No. 636 at 7, 12; ECF No. 640 at 7.)[3]

"Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be awarded as costs. 28 U.S.C. § 1920(2). Plaintiffs argue that the Archstone Defendants obtained the arbitration transcripts for use in the arbitration, not for use in this case. (ECF No. 636 at 6–7, 11–12.)

Plaintiffs' distinction is artificial. The claim resolved through arbitration was originally brought in this lawsuit, and the arbitration was a predicate to moving on with the other claims in this lawsuit. The depositions and testimony from the arbitration likely would have been elicited through discovery in this case but for the arbitration clause, and the transcripts were indeed used in this case to assist the parties in avoiding duplicative discovery on the remaining claims. (*See* ECF No. 250 at 1–3; ECF No. 260 at 10; ECF No. 340 at 33–34.)

Plaintiffs further claim that "[o]f the more than 3000 pages of hearing transcript, the parties cited lines from only sixty pages in the summary judgment filings in this Court. And of that number, the Archstone Defendants referred to a mere five pages." (ECF No. 636 at 7.) But this is improper hindsight bias. It is not a basis to deny recovery of these costs.

This objection is overruled.

---

[3] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination, particularly in filings with prefatory material such as a table of contents.

b. *Deposition Videos*

The Tenth Circuit interprets § 1920(2) to encompass video recordings of depositions, not just stenographic transcripts. *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1476–77 (10th Cir. 1997). Plaintiffs do not dispute the Archstone Defendants' representation that "Plaintiffs took more than 55 depositions" in this case. (ECF No. 640 at 3.) The Archstone Defendants purchased all of the video recordings at a cost of $12,147.50, which the Clerk awarded. (*See* ECF No. 636 at 11.) Plaintiffs argue that the Archstone Defendants had no need to purchase any video recording before it became clear that the case would proceed to trial, or at least the Archstone Defendants did not need to purchase the video recordings "of depositions of witnesses slated to appear at trial or otherwise within the subpoena power of the Court."[4] (*Id.* at 10–11.)

"Because deposition transcripts and deposition videos serve different purposes (the former is best for presenting written arguments, the latter is best for presenting testimony in court), the better practice is to allow the costs of both videotaped and stenographic depositions, absent some good reason not to do so." *Maiteki v. Marten Transp. Ltd.*, 2016 WL 3878502, at *7 (D. Colo. July 18, 2016) (internal quotation marks omitted), *aff'd*, 682 F. App'x 695 (10th Cir. 2017). Plaintiffs' only argument for disallowing all video recording costs is that such costs are unnecessary until trial is certain. That rationale, if accepted, would undermine the general preference for awarding video recording costs.

This objection is overruled.

---

[4] Under this alternative theory, video recording costs would be reduced by $6832.50. (*Id.* at 11.)

4

2. Costs Awarded Under State Law

The parties agree that in a diversity case such as this one, a federal court in some circumstances may award costs that could be awarded in state court under a state cost-shifting statute. (*See* ECF No. 636 at 4; ECF No. 639 at 5–6; ECF No. 640 at 12–15.) *See also Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1176–79 (10th Cir. 2000); *Chaparral Resources, Inc. v. Monsanto Co.*, 849 F.2d 1286, 1292 (10th Cir. 1988). Here, the Clerk taxed some costs under Colorado's cost-shifting regime codified at Colorado Revised Statutes §§ 13-16-105 and -122.

Plaintiffs argue that the Clerk should have applied Maryland law because Maryland law governs the contracts at issue in this case. (ECF No. 636 at 5.) *See also Stender*, 2017 WL 3676473, at *10. Both groups of Defendants respond that this is a new argument, not advanced to the Clerk before or at the costs hearing, and implicitly contrary to Plaintiffs' prior arguments against certain costs which cited to Colorado authority. (ECF No. 639 at 2; ECF No. 640 at 13.) Plaintiffs, in their reply brief, do not deny Defendants' accusations, but assert that "this Court reviews parties' requests for costs *de novo*." (ECF No. 642 at 1.)

De novo review does not mean a party may advance new arguments, but only that the reviewing court owes no deference to the decision below. In any event, different states' laws may govern different issues in the case. *See MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281–82 (9th Cir. 1999) (Nevada law governed entitlement to attorneys' fees while the underlying contract had a New Jersey choice-of-law clause); *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2014 WL 2619532, at *3–4 (D. Colo. June 12, 2014)

5

(Nebraska law applied to question of attorneys' fees although Colorado law governed substantive causes of action). Plaintiffs do not explain why Maryland law should control over Colorado law on the question of costs—a matter deeply entwined with the forum in which one chooses to sue. The Court agrees with the Clerk and Defendants that Colorado law should apply to the matter of costs, to avoid as much as possible an incentive to forum shop as between Colorado state and federal courts.

In that light, the Court turns to Plaintiffs' objections to costs awarded under Colorado's statutory authority.

### a. *Attorney Travel & Lodging*

The Clerk awarded the Archstone Defendants $29,778 for travel and lodging associated with depositions in this case, $3,575 for travel and lodging associated with the arbitration hearing, and $5,439 for travel and lodging associated with attending status and scheduling conferences in this courthouse. (ECF No. 636 at 8, 12.)

In *Cherry Creek School District No. 5 v. Voelker by Voelker*, 859 P.2d 805 (Colo. 1993), the Colorado Supreme Court held that Colorado Revised Statutes § 13-16-122 embraces attorney travel and lodging when taking out-of-state discovery depositions. *Id.* at 812–14. The Colorado Court of Appeals has since extended this principle to "travel expenses counsel incurs in meeting with experts and clients . . . so long as the requesting party proves that the expenses were reasonable and necessarily incurred." *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1194 (Colo. App. 2011).

This authority does not obviously embrace all of the travel-and-lodging categories under which the Clerk awarded costs. Nonetheless, Plaintiffs' only challenge (beyond the argument that Maryland law should apply) is that the Clerk cited as authority

6

Colorado Revised Statutes § 13-16-122(h), which permits an award of "[a]ny attorney fees, when authorized by statute or court rule." (*See* ECF No. 635 at 5, 30.) Subsection (h) does not apply here and this may have been a typographical error on the Clerk's part. But the Clerk also cited *Home Loan Investment Co. v. St. Paul Mercury Insurance Co.*, 78 F. Supp. 3d 1307, 1323 (D. Colo. 2014), which awarded deposition travel costs under Colorado law, citing the Colorado Supreme Court's *Cherry Creek School District* decision.

The Court is unaware of Colorado authority holding that a court may award travel and lodging costs for attendance at court hearings and conferences. But Plaintiffs failed to offer any argument specific to that line item beyond the Clerk's apparently erroneous citation to § 13-16-122(h).[5] Accordingly, this objection is overruled.

        b.    *Electronic Legal Research*

The Colorado Court of Appeals holds under the logic of *Cherry Creek School District* that electronic legal research expenses may be awarded as costs if the client was billed for such expenses separate from attorneys' fees, the legal research was necessary for trial preparation, and the expenses are reasonable. *Roget v. Grand Pontiac, Inc.*, 5 P.3d 341, 348–49 (Colo. App. 1999). The Clerk awarded the Archstone Defendants $182,287.01 for electronic legal research. (ECF No. 636 at 12.) Plaintiffs challenge this award on two bases: (1) "the Colorado Supreme Court does not appear to have spoken on the issue"; and (2) a Tenth Circuit case suggests that electronic legal research expenses are essentially a substitute for attorneys' fees, but attorneys' fees

---

[5] Nearly every time the Clerk cites § 13-16-122, it is to § 13-16-122(h), regardless of context. (*See generally* ECF Nos. 633, 635.) The Court therefore suspects that the "(h)" is a copy-and-paste artifact.

are not at issue here.  (*Id.* at 13.)  The Court will address these arguments in reverse order.

The Tenth Circuit case in question is *Sorbo v. United Parcel Service*, 432 F.3d 1169 (10th Cir. 2005), a federal employment discrimination case.  *See id.* at 1171–74.  There, the Tenth Circuit emphasized "the many cases expressly recognizing that computer research expenses are not authorized as a cost *in § 1920.*"  *Id.* at 1180 n.10 (emphasis added).  It then quoted with approval a Second Circuit case that analogized computerized legal research to "a substitute for an attorney's time that is compensable under an application for attorneys' fees."  *Id.* (quoting *United States ex rel. Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996)) (internal quotation marks omitted).  The fact that 28 U.S.C. § 1920 does not itself authorize compensation for computer legal research says nothing about whether such compensation is available under state law.  *Sorbo* is therefore irrelevant in the present context.

As for the fact that the Colorado Supreme Court has not spoken on the question, the Archstone Defendants respond that "this simply means that the rule first announced [by the Colorado Court of Appeals] in *Roget* remains controlling law."  (ECF No. 640 at 16.)  To the extent the Archstone Defendants contend that *Roget* is controlling law in *federal* court, they are mistaken.  Federal courts sitting in diversity are not bound by the decisions of state intermediate appellate courts.  *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003).  Be that as it may, Plaintiffs do not argue that the Colorado Supreme Court would reject *Roget*.  In this circumstance, the Court finds that *Roget* is the best evidence of what the Colorado Supreme Court would

8

do if confronted with the question, so the Clerk committed no error in taxing legal research costs.[6]  Plaintiffs' objection is overruled.

**B.     Costs Awarded to Tishman Defendants**

   1.    <u>Costs Explicitly Available Under 28 U.S.C. § 1920</u>

The Clerk awarded the Tishman Defendants $52,472.01 for transcripts and video recordings of the more than fifty depositions in this case.  (ECF No. 636 at 14–15; ECF No. 640 at 3.)  Plaintiffs claim that the Archstone Defendants took the lead role in this case and that the parties deposed only five Tishman Defendants, so the Tishman Defendants had no need to attend (and incur costs for) any depositions beyond those five.  (ECF No. 636 at 14–15.)  Moreover, Plaintiffs argue that the Archstone and Tishman Defendants should have "copied and shared" a single deposition transcript from each deposition.  (*Id.* at 14.)

In the underlying merger transaction that eventually spawned this lawsuit, the Archstone and Tishman Defendants were seller and buyer, respectively, and therefore had different interests to protect.  The fact that the two defendant groups were separately represented in this lawsuit is therefore unremarkable.  Furthermore, although there may be circumstances where one separately represented group of defendants lacks a reasonable basis to participate in depositions of greatest interest to a different separately represented group, Plaintiffs have not shown how the Tishman Defendants could have known ahead of time which depositions would be safe to skip—*i.e.*, which depositions had no reasonable possibility of raising issues of concern to the Tishman Defendants.

---

[6] Plaintiff does not argue that any of the three *Roget* elements are not satisfied here.

As for copying and sharing transcripts, Plaintiffs cite no authority that this is ever required, or is even permissible under the terms by which shorthand reporters provide their services. If it were permissible, it seems that courts would have long since ordered that only one party should ever pay for a deposition transcript (or video, if applicable) and then that party should share with all other parties. Plaintiffs notably do not argue that they would have been willing to share their transcripts and videos with either defendant group, thus reducing costs further.[7]

This objection is overruled.

### 2. Costs Awarded Under State Law

The Clerk also awarded the Tishman Defendants travel and lodging expenses associated with depositions, totaling $9,171. (ECF No. 636 at 14.) Plaintiffs challenge this portion of the award for the same reasons stated in Part II.A.2.a, above, and the Court similarly overrules this objection for the same reasons stated there.

### III. CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Clerk's awards of costs (ECF Nos. 633, 635) in all respects. The stay of execution (ECF No. 638) is LIFTED effective **October 15, 2018**.

---

[7] In a footnote, Plaintiffs argue that the Tishman Defendants "prematurely ordered" the deposition videos. (ECF No. 636 at 15 n.6.) To the extent this is meant to re-raise the objection addressed in Part II.A.1.b, above, the Court overrules it for the reasons stated there.

Dated this 27th day of September, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge